## A00A0758. PINKINS v. THE STATE.
### (534 SE2d 192)

JOHNSON, Chief Judge.

Along with co-defendants Brooks, Hurt and Littlejohn, Larry Pinkins was indicted for the offenses of conspiracy to commit armed robbery and armed robbery. Hurt pled guilty to conspiracy to commit armed robbery, and Littlejohn pled guilty to robbery. Both were witnesses in the jury trial of Pinkins and Brooks. A jury found both Pinkins and Brooks guilty of conspiracy to commit armed robbery. A judgment of conviction was entered upon the jury's verdict, from which Pinkins appeals.

Pinkins contends the evidence was insufficient to support a conviction for conspiracy to commit armed robbery. He also asserts that the trial court erred in failing to remove a juror who, during the course of the jury's deliberations, telephoned a personal friend who was an assistant district attorney not involved in the case against Pinkins.

We find the evidence was sufficient to support Pinkins' convic-

---

[18] *In the Interest of B. P.,* 207 Ga. App. 242, 245 (427 SE2d 593) (1993).
[19] See *In the Interest of R. M.,* 232 Ga. App. 727, 729 (503 SE2d 635) (1998).

tion for conspiracy to commit armed robbery. We further find that the trial court did not err in refusing to remove the juror in question because no communication took place which prejudiced Pinkins. For these reasons, we affirm the judgment of conviction.

1. OCGA § 16-4-8 provides that a person commits the offense of conspiracy when he "with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy." Viewed in a light most favorable to support the jury's verdict, the evidence shows that Littlejohn spent the afternoon with Pinkins at Pinkins' house planning an armed robbery. That evening, Brooks and Hurt came to the house, and the group went over the plan again. Everyone except Hurt, who stayed in the car, talked about robbing a Tanner's Restaurant using guns. The plan agreed upon specified when the robbery would occur, how it would occur and the actions to be taken by each person. Brooks had a .380 caliber handgun, and Pinkins had a .22 caliber handgun.

Hurt drove the participants, including Pinkins, to Tanner's. They parked behind the restaurant. Pinkins asked, "Are you ready?" Pinkins, Brooks, Littlejohn and Pinkins' brother entered the restaurant and sat at two separate tables. They ate. A Tanner's employee was helping with the robbery, and Pinkins followed him into the restroom. Pinkins came back to the table following the meeting with the Tanner's employee and told everyone the robbery was ready to "go down." However, Littlejohn left because he did not think things were going according to plan. Littlejohn then robbed a waitress outside the restaurant. When the waitress reentered the restaurant after being robbed, Pinkins and the other conspirators left the restaurant. They eventually returned to Pinkins' house. At the house, Hurt heard Pinkins say he had been watching for a signal from the Tanner's employee to let them know when to rob the restaurant. Hurt saw that Pinkins had a gun.

Pinkins' statement upon his arrest differed from his trial testimony, but in both he denied any involvement in a robbery.

(a) Pinkins first contends that the evidence was insufficient to support his conviction because Littlejohn's testimony was unbelievable. However, credibility of any witness, including an accomplice, is a question for the jury.[1]

(b) Pinkins next contends that the evidence was insufficient to support his conviction because Littlejohn's testimony was not sufficiently corroborated. The primary evidence against Pinkins came from Littlejohn, who was also charged with conspiracy and pled

---

[1] *Kinney v. State*, 271 Ga. 877, 880 (2) (525 SE2d 91) (2000); *Bush v. State*, 267 Ga. 877, 878 (485 SE2d 466) (1997).

guilty to robbery. Although Georgia law does not allow a conviction based on the uncorroborated testimony of an accomplice,[2] such testimony may be corroborated by slight evidence from an extraneous source identifying the accused as a participant in the criminal act.[3] The corroborating evidence connecting a defendant to the crime may consist entirely of circumstantial evidence[4] and may come from the testimony of other accomplices to the crime.[5] Whether the corroborating evidence is sufficient is a matter for the jury, and even slight evidence of corroboration connecting an accused to a crime is legally sufficient.[6]

Hurt's testimony that she overheard Pinkins saying he was waiting for the Tanner's employee to give the signal to begin the armed robbery, alone, was sufficient evidence to corroborate Littlejohn's testimony that Pinkins conspired to rob Tanner's. Hurt also corroborated Littlejohn's testimony regarding the meeting at Pinkins' house and the drive to Tanner's. She further testified that Pinkins and Brooks had guns on the night the robbery was to occur. In addition, Pinkins told a detective that Brooks, Hurt, and Littlejohn had come to his house earlier that day and discussed robbing Tanner's. This evidence sufficiently corroborates Littlejohn's testimony. The testimony at trial was sufficient to support Pinkins' conviction.

(c) Pinkins asserts the evidence was insufficient to support his conviction because there was no evidence of an overt act in furtherance of the armed robbery. We disagree.

Possession of tools for the commission of a crime, including possessing a weapon to be used in a robbery, is an overt act upon which an armed robbery conspiracy conviction may be based.[7] Moreover, it is well established that when individuals associate themselves in an unlawful enterprise, any act done in pursuance of the conspiracy by one or more of the conspirators is in legal contemplation of the act of all.[8]

In the present case, Littlejohn testified that the group talked about robbing Tanner's with guns, that they drove to Tanner's, that they entered the restaurant with guns and that they watched for the signal to begin the armed robbery. In addition, Hurt verified that she saw Pinkins with a gun after they all fled to his house. It is unclear from the evidence why the armed robbery was never completed, but

---

[2] OCGA § 24-4-8.

[3] *Terrell v. State*, 271 Ga. 783, 786 (3) (523 SE2d 294) (1999); *Bush*, supra; *Dalton v. State*, 237 Ga. App. 217, 223 (3) (513 SE2d 745) (1999).

[4] *Klinect v. State*, 269 Ga. 570, 572 (1) (501 SE2d 810) (1998).

[5] *Dalton*, supra.

[6] *Klinect*, supra.

[7] See *Fuller v. State*, 165 Ga. App. 55, 57 (2) (299 SE2d 397) (1983).

[8] See *McCright v. State*, 176 Ga. App. 486, 487-488 (1) (336 SE2d 361) (1985).

the completion of the robbery is not necessary to sustain Pinkins' conviction for conspiracy to commit the armed robbery. Clearly the jury was authorized from the evidence to determine that overt acts to effect the object of the conspiracy had occurred.

2. For the reasons set out in Division 1, we hold that the trial court did not err in denying Pinkins' motion for a directed verdict of acquittal based on the same grounds.[9]

3. Pinkins contends the trial court erred in not removing a juror who, during the course of deliberations, telephoned an assistant district attorney who was a personal friend. To his credit, the assistant district attorney who received the telephone call immediately ascertained that the call was inappropriate, informed the juror that the call was inappropriate, immediately informed the assistant district attorney prosecuting the case about the telephone call and made himself available to the court for questioning. The record shows that on the second morning of jury deliberations, the assistant district attorney prosecuting the case against Pinkins informed the court and defense counsel that one of the jurors had called another assistant district attorney who was a close personal friend of the juror. According-ing to this prosecutor, the juror told the other assistant district attorney that she "wanted to ask a question about a legal matter." After ascertaining that the juror was seated on a current criminal case, this assistant district attorney informed the juror that he could not talk to her and told her that any questions she wanted to ask should be directed to the court. The assistant district attorney did not give the juror any legal information.

The trial court then interviewed the juror in question, who stated that she called the assistant district attorney to ask a general question about the role of the jury. She said she had not planned to ask any questions about the case. She testified that she did not ask the assistant district attorney any questions and that nothing about her conversation with the assistant district attorney affected how she felt about the case or the way deliberations were going. The trial court reminded the juror that she was not allowed to do any indepen-dent research during the trial and asked the juror if she had violated that part of the court's instructions. The juror responded "no."

Pinkins argues that this juror should have been replaced with an alternate because she violated her oath as a juror by calling the assistant district attorney. The trial court denied the request to replace the juror, finding that no communication took place which prejudiced Pinkins or his defense.

---

[9] *Woods v. State*, 269 Ga. 60, 61 (2) (495 SE2d 282) (1998); *Edmond v. State*, 267 Ga. 285, 287 (2) (476 SE2d 731) (1996).

It is well established that the guarantee of a fair and impartial jury is a central safeguard to a fair trial in our system of criminal justice.[10] "There is a presumption of prejudice to the defendant when an irregularity in the conduct of a juror is shown and the burden is on the prosecution to prove beyond a reasonable doubt that no harm has occurred."[11] However, we have also recognized that some irregularities are inconsequential.[12] The decision whether to remove a juror from a panel lies within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion.[13]

The record before us discloses no basis upon which to conclude that the trial court's failure to excuse this juror violated Pinkins' right to an impartial jury or prejudiced his defense. According to both the assistant district attorney who received the telephone call and the juror involved, before any communication which could possibly have prejudiced Pinkins occurred, the assistant district attorney cut the juror off, informing her that he could not talk to her and that she would have to address any questions to the trial judge. The trial court did not abuse its discretion in refusing to remove the juror.

*Judgment affirmed. Phipps, J., and McMurray, Senior Appellate Judge, concur.*

DECIDED APRIL 28, 2000.

*Carla J. Friend,* for appellant.

*J. Tom Morgan, District Attorney, Jeanne M. Canavan, Barbara B. Conroy, Assistant District Attorneys,* for appellee.

---

[10] *Lamons v. State,* 255 Ga. 511, 512 (340 SE2d 183) (1986).

[11] (Citation omitted.) Id.

[12] Id.

[13] See OCGA § 15-12-172; *Baptiste v. State,* 190 Ga. App. 451, 453 (2) (379 SE2d 165) (1989).