**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 18, 2020**

# In the Court of Appeals of Georgia

A20A0537. STOKES v. THE STATE.

MILLER, Presiding Judge.

A Gwinnett County jury convicted James Leroy Stokes of conspiracy to commit robbery as part of a home invasion that occurred in 2014. Stokes appeals from the trial court's denial of his motion for new trial, arguing that (1) his trial counsel was ineffective; and (2) the evidence was insufficient to support the verdict. Because Stokes failed to establish that his trial counsel was ineffective, and because the evidence was sufficient to support Stokes's conviction, we affirm.

Viewed in the light most favorable to the verdict,[1] the evidence adduced at trial showed that, in the early morning of August 6, 2014, two men forcibly entered the home of the victim, Adam Schrier. During the incident, one of the men shot Schrier

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

in the chest and shot Schrier's girlfriend, Jami Smith, in the leg. The men then held Smith and her daughter captive in the living room with Schrier while they searched the residence. During the incident, the men repeatedly demanded that Smith tell them where to find "the money" and bound her and her daughter with duct tape. One of the men also fired another shot, which grazed Smith's shoulder and struck her daughter in the arm. At one point, Smith told the men she had money in her purse, which the men took. Once the men left, Smith called 911. Schier passed away at the scene from his injuries.

During the week prior to this incident, Brian Brewner, Stokes's co-defendant, was staying at a hotel with his girlfriend. While at the hotel, Brewner met several times with James Staples. Brewner spoke to Staples about wanting to get back some drugs from Schrier, and Staples showed Brewner the location of Schrier's home on Google Maps. Brewner told his girlfriend that Staples had asked for his help with retrieving a large amount of drugs and cash from Schrier. On the evening prior to the home invasion, Brewner was with two other co-defendants, one of whom was talking about doing a "jug," or committing a robbery.

On the day prior to the home invasion, another of the co-defendants, Devon Jenkins, along with his girlfriend, rented a room from another hotel near the hotel

where Brewner was staying. Jenkins's girlfriend testified at trial that Stokes, whom she knew as "Jizzle," was present when they rented the room and that Stokes stayed in the room with Brewner, Jenkins, and the other co-defendants on that day. She testified that before the men left the room, she overheard one of them say that "Jizzle [Stokes] should drive because he knows how to drive better than anyone else." She further testified that she saw Stokes and the other co-defendants leave in Brewner's white pickup truck.

The men returned to the hotel later that morning. When Brewner's girlfriend awoke that morning, she saw Stokes sleeping in the living area of the hotel room with the other co-defendants. She also had breakfast with Stokes and the other co-defendants at the hotel that morning. Sometime after the incident, Jenkins told his girlfriend that he had gone to rob an individual on the incident date, that "something happened," and that he had shot someone. Jenkins also told her that another accomplice had tried to leave the others behind during the home invasion, but Stokes stopped him from doing so.

A grand jury indicted Stokes and four other co-defendants on a number of counts, including one count of conspiracy to commit robbery (OCGA § 16-4-8). A jury convicted Stokes of conspiracy to commit robbery and acquitted him of all other

counts, and the trial court sentenced Stokes to serve ten years in prison. Stokes filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

1. Stokes first asserts that his trial counsel rendered ineffective assistance by failing to file a general or special demurrer to the conspiracy count in the indictment and by failing to object to the trial court's jury charge on conspiracy to commit robbery. We conclude that trial counsel was not ineffective.

> In order to evaluate [Stokes's] claim of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*, which requires [Stokes] to show that [his] trial counsel's performance was deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for trial counsel's errors, the outcome of the trial would have been different. In addition, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.

(Citations and punctuation omitted.) *Roberts v. State*, 344 Ga. App. 324, 334 (4) (810 SE2d 169) (2018).

(a) Stokes first asserts that his trial counsel was ineffective in failing to object to the trial court's jury charge as to conspiracy to commit robbery. We disagree.

The Georgia robbery statute provides that "[a] person commits the offense of robbery when, with intent to commit theft, he takes property of another from the

4

person or the immediate presence of another: (1) [b]y use of force; (2) [b]y intimidation. . . ; or (3) [b]y sudden snatching." OCGA § 16-8-40. In the present case, the indictment stated that Stokes

> conspire[d] to commit a violation of OCGA [§] 16-8-40, the offense of Robbery, and one or more of the conspirators did perform one or more of the following overt acts, to wit locate the residence of Adam Schrier, plan to forcibly enter said residence and take methamphetamine and United States currency from the presence of others, and drive to the residence[.]

The trial court charged the jury on conspiracy to commit robbery as follows:

> A person commits robbery when with intent to commit theft, that person takes property of another from the person or the immediate presence of another by the use of force, by intimidation, by use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to that person or to another. The essential elements of the offense that the State must prove beyond a reasonable doubt are that the taking was done with the purpose to commit theft against the will of the person robbed and by force, by intimidation, . . . or by the use of threats or coercion, or by placing such person or another in fear of immediate serious bodily injury to himself or herself or another.
>
> As to . . . conspiracy to commit robbery, I charge you that a person commits conspiracy to commit a crime when that person, together with one or more other persons, conspires to commit any crime, and any one or more of such persons does any overt act to bring about the object of that conspiracy. The defendants in this case have been charged with conspiracy to commit the crime of robbery. The crime of robbery has been previously defined for you.

5

Thus, Stokes argues that, because the trial court's instruction included the definitions of robbery by intimidation, threat, or coercion (OCGA § 16-8-40 (a) (2)), the trial court erred by instructing the jury that they could convict Stokes for conspiracy to commit robbery on a basis other than what was charged in the indictment.

At the outset, Stokes is correct that "instructions to the jury must be tailored to fit the charge in the indictment and the evidence admitted at trial." *Williams v. State*, 309 Ga. App. 688, 691 (2) (710 SE2d 884) (2011). Simultaneously, however,

> it is not usually cause for new trial that an entire Code section is given. A charge on a Code section in its entirety is not error where a part thereof is applicable and it does not appear that the inapplicable part misled the jury or erroneously affected the verdict. Further, in such event, any error is not harmful if the trial judge confined the elements of the crime to those charged in the indictment.

(Citation and punctuation omitted.) Id. In the present case, it does not appear that the trial court's charge could have misled the jury into convicting Stokes on a basis other than what was charged in the indictment. The trial court instructed the jury that "[t]he burden of proof rests upon the State to prove every material allegation of the indictment," and the trial court sent the indictment with the jury during its deliberations. As such, the trial court did not err in instructing the jury on conspiracy to commit robbery, and therefore Stokes's trial counsel did not render ineffective

6

assistance by failing to object to the trial court's jury instruction. See *Wallace v. State*, 277 Ga. App. 280, 281-282 (3) (626 SE2d 229) (2006) (trial court did not err by reading the entire code section in giving jury instruction on armed robbery where the trial court instructed the jury that it was authorized to return a guilty verdict only if it believed beyond a reasonable doubt that the defendant committed armed robbery "as alleged in the indictment," and indictment was sent out with the jury during deliberations); *Williams*, supra, 309 Ga. App. at 691-692 (2) (trial counsel was not deficient for failing to object to trial court's jury charge on felony obstruction where trial court's reading of the entire code section was not reversible error).

(b) We also determine that the conspiracy count as alleged in the indictment was sufficient to withstand both a general and special demurrer, and so trial counsel was not ineffective for failing to file either demurrer.

> An accused may challenge the sufficiency of an indictment by filing a general or special demurrer. A general demurrer challenges the sufficiency of the *substance* of the indictment, whereas a special demurrer challenges the sufficiency of the *form* of the indictment. An indictment shall be deemed sufficiently technical and correct to withstand a general demurrer if it states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury. In other words, if an accused would be guilty of the crime charged if the facts as alleged in the indictment are taken as true, then the indictment is sufficient to withstand a general demurrer; however, if an accused can admit to all of

7

the facts charged in the indictment and still be innocent of a crime, the indictment is insufficient and is subject to a general demurrer. Furthermore, this Court reviews a trial court's ruling on a general or special demurrer de novo in order to determine whether the allegations in the indictment are legally sufficient.

(Citations and punctuation omitted.) *Smith v. State*, 340 Ga. App. 457, 458-459 (797 SE2d 679) (2017). As noted above, the indictment here alleged that Stokes

conspire[d] to commit a violation of OCGA [§] 16-8-40, the offense of Robbery, and one or more of the conspirators did perform one or more of the following overt acts, to wit locate the residence of Adam Schrier, plan to forcibly enter said residence and take methamphetamine and United States currency from the presence of others, and drive to the residence[.]

Stokes argues that this count of the indictment is subject to a general demurrer because the language "forcibly enter said residence and take methamphetamine and United States currency" fails to assert one of the essential elements of robbery—that the taking be done by force, by intimidation, or by sudden snatching. However, Stokes's argument does not comport with the plain language of the indictment. In the relevant clause alleging that Stokes did "forcibly enter said residence and take methamphetamine and United States currency," the word "forcibly" modifies both the verbs "enter" and "take," meaning that the indictment plainly alleges that the defendants conspired to take the drugs and cash by force. As such, Stokes could not

8

admit to all of the facts in this count of the indictment and still be innocent of conspiracy to commit robbery. See *Smith*, supra, 340 Ga. App. at 458-459. "Because [the conspiracy count] of the [indictment was] sufficient to survive a general demurrer, counsel's failure to file a general demurrer thereto cannot be deemed deficient performance." *Bradford v. State*, 327 Ga. App. 621, 627 (2) (760 SE2d 621) (2014).

In addition, Stokes's trial counsel did not render ineffective assistance by failing to file a special demurrer to the indictment.

> The true test of the sufficiency of an indictment to withstand a special demurrer is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. It is useful to remember that the purpose of the indictment is to allow defendant to prepare his defense intelligently and to protect him from double jeopardy.

(Citations and punctuation omitted.) *Jones v. State*, 289 Ga. 111, 115-116 (2) (c) (709 SE2d 773) (2011). As noted above, the plain language of the indictment specifically alleges that Stokes and others conspired to take drugs and cash by force. "Since the charge[] in the indictment contained the elements of the offenses intended to be

9

charged and sufficiently apprised [Stokes] of what he had to be prepared to meet, thereby allowing him to prepare a defense and safeguarding him against double jeopardy, a timely-filed special demurrer would have been denied." Id.

"Because the indictment was sufficient to withstand demurrer, the failure of [Stokes's] trial counsel to move for demurrer did not constitute deficient performance. Accordingly, [Stokes] did not demonstrate that he received ineffective assistance of counsel[.]" *Raybon v. State*, 309 Ga. App. 365, 367 (710 SE2d 579) (2011).

2. Stokes next argues that the evidence presented at trial was insufficient to support his conviction for conspiracy to commit robbery. We conclude that the evidence was sufficient to support Stokes's conviction.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia* and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

(Citations and punctuation omitted.) *Ratana v. State*, 297 Ga. App. 747, 747–748 (678 SE2d 193) (2009). "To warrant a conviction on circumstantial evidence, the

10

proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6.

Under the above standard, the evidence was sufficient to support Stokes's conviction for conspiracy to commit robbery. "A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy." OCGA § 16-4-8.

> To prove conspiracy, two elements must be shown: an agreement and an act in furtherance of it. The state need not prove an express agreement between the co-conspirators; it only must show that two or more persons tacitly came to a mutual understanding to accomplish or to pursue a criminal objective. Conspiracy may be shown through circumstantial evidence. The conspiracy may be inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators and other circumstances, such as presence, companionship and conduct before and after the commission of the alleged offense.

(Citations and punctuation omitted.) *Williamson v. State*, 300 Ga. App. 538, 547-548 (5) (685 SE2d 784) (2009).

Contrary to Stokes's argument, the evidence was sufficient for a reasonable juror to infer that Stokes entered into an agreement with the other co-defendants to carry out a plot to recover drugs and money from the victim's home. In the week prior

11

to the incident, Brewner repeatedly met Staples to discuss "retrieving" drugs and cash from the victim's home. Then, on the day before the incident, Stokes went with Brewner and the other co-defendants to rent a room at the hotel near where Brewner was staying. Two of the co-defendants met with Brewner in his hotel room to discuss doing a "jug," or committing a robbery, and subsequently, Stokes met with those co-defendants. Then, while Stokes was in a hotel room with the other co-defendants, a witness overheard one of the men say that "[Stokes] should drive." On the night of the home invasion, Stokes left the hotel with the other co-defendants in Brewner's white truck, which was identified as being at the scene of the incident. Stokes was also present with the other co-defendants in Jenkins's hotel room after the incident. One of the co-defendants later told a witness that he had gone to rob an individual, stating that Stokes had prevented another accomplice from leaving the others behind. We conclude that this evidence is sufficient to show that Stokes entered into an agreement and committed at least one overt act in furtherance of that agreement such that a reasonable jury could convict him of conspiracy to commit robbery. See *Pinkins v. State*, 243 Ga. App. 737, 738-740 (1) (534 SE2d 192) (2000) (evidence sufficient to support a conspiracy to commit armed robbery conviction where

12

defendant was within a group that discussed the armed robbery prior to the event and defendant traveled to the location with the co-defendants while wielding a weapon).

In sum, Stokes did not receive ineffective assistance of counsel, and the evidence was sufficient to support the jury's verdict. We therefore affirm the trial court's denial of Stokes's motion for new trial.

*Judgment affirmed. Mercier and Colvin, JJ., concur.*