### S99A1424. KINNEY v. THE STATE.
(525 SE2d 91)

HINES, Justice.

Larry D. Kinney was convicted of felony murder while in the commission of armed robbery and aggravated assault in connection with the death of his cousin, Priscilla McKnight. Kinney appeals, contending that the evidence of his guilt of the underlying felonies was insufficient. Finding that the evidence was sufficient to support the conviction for felony murder, we affirm.[1]

Priscilla McKnight's bloodied body was found by her brother at

---

[1] The murder occurred on December 1, 1997. On July 16, 1998, a Floyd County grand jury indicted Kinney, along with Cedric L. Jones, for Priscilla McKnight's malice murder, felony murder while in the commission of armed robbery and aggravated assault, armed robbery, and aggravated assault. Both men were also indicted as recidivists. Kinney was tried before a jury May 2-5, 1999. He was found not guilty of malice murder, but guilty of felony murder, armed robbery, and aggravated assault. On May 5, 1999, Kinney was sentenced to life imprisonment for felony murder. The underlying felonies merged for the purpose of sentencing. The notice of appeal was filed on June 1, 1999, and the appeal was docketed in

her home on the morning of December 1, 1997. She was clad in bed-clothes and lying on her bed; the television was on. McKnight had sustained devastating multiple blunt force injuries to the head, which crushed her skull, as well as multiple stab wounds, predominantly in the back. The pattern of head injuries was consistent with infliction by a claw-type hammer and the stab wounds were likely caused by some type of knife. Investigators decided not to release specific information about the injuries sustained or the probable weapons used in hope of obtaining inculpating details from interviews with witnesses or suspects. In fact, the "word on the street" was that the victim was killed with a stick or ball bat.

McKnight's family last saw or spoke with her about 11:00 p.m. on November 30, 1997, the evening before she was killed. McKnight's home was not ransacked and there were no signs of a forced entry. But, her purse, wallet, and money were missing. McKnight was known to work several jobs and to have a regular paycheck. Around the time of her death, her family knew that McKnight had approximately $350 to $400 with her at home, and that she kept her cash and checks beside her bed. McKnight's wallet was later found on a wooded trail near the murder scene; the wallet was empty save for a grocery store preferred customer card.

In April 1998, shortly after a reward was posted in the case, police received a call about the murder from Watkins, a woman who had provided reliable information in the past. The following day, the police interviewed Watkins. As a result of the discussion with Watkins, the police interviewed Cedric Jones. He told the police that Kinney and Kinney's brother, Michael, murdered McKnight. Jones related that on the evening prior to McKnight's death, he and Kinney and Michael were smoking crack and drinking at Jones' home, which was located in front of McKnight's apartment; Kinney and Michael were out of money; Michael suggested that they go to McKnight to get some money; the men knew that McKnight had a weekly paycheck and they also believed that McKnight had won some cash in the lottery; the three men walked to McKnight's apartment and Kinney and Jones went in; McKnight was wearing nightclothes and a robe and it appeared that she had already been asleep or in bed; Kinney and Jones briefly chatted with McKnight; Kinney asked McKnight if he could borrow money from her and McKnight told Kinney that she did not have any money; Kinney kept on asking for money and McKnight continued to refuse his requests; Jones gazed at pictures on the wall; Michael entered the apartment through the

this Court on June 25, 1999. The case was submitted for decision without oral argument on August 16, 1999.

back door; the men followed McKnight into the bedroom; McKnight got back in bed; Kinney and McKnight started to argue; Kinney took a hammer from his pocket and struck McKnight across the head several times; Michael "stuck" McKnight in the side with a little knife; Jones thought Michael took McKnight's pocketbook; Jones yelled and ran out the door; as Jones did so, Kinney turned up the volume on the television. Jones described McKnight's apartment, and stated that it had been his first time there. Jones also told police that later Kinney and Michael threatened him if he disclosed the murder. Jones, Kinney, and Michael[2] were arrested for McKnight's murder.

At trial, Jones recanted his statements to police, saying that he had lied because he was scared. He tried to explain his accurate descriptions of McKnight's clothing, injuries and apartment as "wild guesses" or coincidences. Watkins also testified at trial. She related that on December 1, 1997, at approximately 4:00 a.m., Kinney came to her home to buy crack cocaine; Kinney seemed "real nervous"; he bought $30 worth of crack; Kinney left but then came back later that day for more drugs; Watkins' husband sold Kinney $10 worth of crack and told him not to come back; about 25 minutes later, Kinney returned and wanted another "dime" of crack cocaine, but indicated that he did not have the money for it; Watkins told Kinney he would have to wait until her husband came home; Watkins was scared because of Kinney's behavior; Kinney was "real nervous," fidgeting, and "acting all crazy"; Kinney told Watkins that he needed her husband to take him to Alabama or Tennessee; after Watkins pressed Kinney to tell her what was wrong, Kinney asked her if she had heard about "a girl getting killed in South Rome"; Kinney related that he was present in McKnight's apartment the night of the murder; he stated that he, Jones and "Michael" went there; they entered the bedroom, Jones asked McKnight for money and when she refused, Jones "went crazy" and hit her in the head; they took McKnight's wallet and split the money.

Kinney testified on his own behalf and asserted that at the time of the murder he was at his girlfriend's house, had gone to bed around 11:30 p.m., and remained there until he went to work the next morning at about 5:15 a.m. He claimed that he did not find out about the murder until Monday evening when he returned home from work, and he denied the drug-buying encounter with Watkins. However, he conceded that McKnight would have let him come into her home at nighttime, but that McKnight would not have trusted Jones by himself in her home.

---

[2] Michael Kinney was released after being rejected as a suspect. The police were unable to identify a viable third suspect.

1. Kinney asserts that armed robbery was not proved because there was no evidence of the taking of property from the person or immediate presence of another by use of an offensive weapon. On the contrary, there was ample evidence that the victim was bludgeoned and stabbed to death in order to rob her of money, and that her wallet and money were, in fact, taken.

2. Kinney also urges that the evidence was insufficient to convict him of aggravated assault because the only witness who implicated him in the commission of such offense was Jones, who recanted his statements at trial. However, the prior inconsistent statement of a witness is admissible as substantive evidence if the witness testifies at trial and is subject to cross-examination. *Woodard v. State*, 269 Ga. 317, 318 (2) (496 SE2d 896) (1998); *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982). See also *Burney v. State*, 252 Ga. 25, 26 (1) (310 SE2d 899) (1984). What is more, Jones' statements to police implicating Kinney in the fatal assault were corroborated by both Watkins' testimony and the physical evidence. OCGA § 24-4-8; *Pye v. State*, 269 Ga. 779, 783 (5) (505 SE2d 4) (1998).

The jury is to determine the credibility of witnesses, so the truthfulness of those witnesses, including that of a possible accomplice, was for the jury to decide. *Bush v. State*, 267 Ga. 877, 878 (485 SE2d 466) (1997). It was likewise the province of the jury to assess the defense's version of events, and it was authorized to disbelieve alibi testimony. *Moore v. State*, 268 Ga. 420, 421 (1) (489 SE2d 842) (1997). The evidence was sufficient to enable a rational trier of fact to find Kinney guilty beyond a reasonable doubt of armed robbery and aggravated assault and the resulting felony murder of Priscilla McKnight. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 18, 2000.

*William H. Newton III*, for appellant.

*Tambra P. Colston, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.