## S00A2025. McCOY v. THE STATE.
### (544 SE2d 709)

HINES, Justice.

Alvin Derrick McCoy appeals from his convictions on charges of felony murder and aggravated assault in connection with the death of Tonya Wright. For the reasons that follow, we affirm in part and vacate in part.[1]

Construed to support the verdicts, the evidence showed that McDowell shot McCoy's friend Harden because of Harden's involvement with McDowell's girlfriend. McDowell was charged with assault and released on bond. He went to the home of Tonya Wright, with whom he had a child. McCoy and a relative of Harden's were seen

---

[1] The crimes occurred on May 9, 1995. On June 27, 1995, a Fulton County grand jury indicted McCoy on charges of malice murder, aggravated assault of Tonya Wright, aggravated assault of Shadarrian McDowell, aggravated assault of Lydia Headspeth, aggravated assault of LaToya Wright, aggravated assault of Shaquita Wright, aggravated assault of Jasmine Wright, and felony murder in the commission of at least one of the specified aggravated assaults. McCoy was tried before a jury March 17-20, 1997, and found not guilty of malice murder, and guilty of all other charges. On that same day, he was sentenced to life in prison for felony murder, and was given sentences of 20 years in prison on each charge of aggravated assault, to be served concurrently with each other, but consecutively to the life sentence. McCoy filed a motion for a new trial on April 17, 1997, which was amended on August 4, 1999, and denied on November 3, 1999. He filed his notice of appeal on December 3, 1999. His appeal was docketed in this Court on August 28, 2000, and submitted for decision on October 23, 2000.

watching Wright's apartment. At approximately 11:30 p.m., a car carrying four men drove up next to Wright's apartment, one man carrying an automatic rifle emerged, approached the windows of Wright's apartment, and fired 36 bullets through two windows of the apartment, killing Tonya Wright. The other inhabitants of the apartment were not hit. The shooter returned to the car and it drove away.

Earlier that evening, at about 11:00, someone knocked on McCoy's door and said "they up there." McCoy went to the place where he kept firearms and then went out the door. He returned around 3:00 a.m. or 4:00 a.m. carrying an automatic rifle. He stood holding the rifle and looking out the window for an hour or so. Later in the morning, he told his girlfriend, who lived with him, that if anyone asked where he was that night, she should say that he went to see Harden. Later, when he and his girlfriend were discussing the Wright shooting, McCoy said "don't make me kill you too."

Also at approximately 11:00 on the night of the shooting, McCoy went to Rawls's residence to borrow a stolen car. Rawls gave him a battery to put into the stolen car, which was parked elsewhere in the neighborhood, and saw an automatic rifle on the backseat of McCoy's car. At approximately 2:00 a.m., McCoy telephoned Rawls and asked him to pick him up in a car. After he had done so, McCoy told Rawls that they would go to "Avis's house" because she was unhappy about some guns that McCoy had left there. McCoy directed Rawls on what roads to drive, choosing a route that avoided the scene of the shooting, which would have been most direct. Before arriving, McCoy stated that "when I brought that AK back, it was smoking." McCoy went into the residence of Avis Searcy and Antoine Bradley, returned with an item wrapped in a blanket, placed it in the trunk, went back inside, and returned with a shoe box, which he also placed in the trunk.

Searcy and Bradley testified that sometime between midnight and 1:00 a.m. on the night of the shooting, McCoy came to their home and left a rifle. Someone then telephoned Bradley and informed him of the shooting. Bradley and Searcy discussed the subject, including the possibility that McCoy had done it, and Bradley paged McCoy to get him to come and retrieve the rifle, which he did at approximately 2:00 a.m.

1. The evidence authorized the jury to conclude that McCoy was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The credit to be given to alibi witnesses is for the jury's determination. *Kinney v. State*, 271 Ga. 877, 880 (2) (525 SE2d 91) (2000). Any failure of the State to prove McCoy guilty of malice murder in the same manner in which the crime was set forth in the indictment is moot as the jury returned a verdict of "not guilty" as to malice murder. See *Adams v.*

*State*, 271 Ga. 485, 488 (5) (521 SE2d 575) (1999).

2. McCoy was sentenced for the felony murder of Tonya Wright and all the aggravated assaults set forth in the indictment. The felony murder count in the indictment charged that McCoy caused Wright's death "during the commission of at least one of the following felonies," and specified the six aggravated assaults charged. The evidence used to convict McCoy of the felony murder was the same evidence used to convict him of the aggravated assault of Tonya Wright, and consequently the sentence as to that aggravated assault must be vacated. See *Jackson v. State*, 272 Ga. 191, 193 (2) (528 SE2d 232) (2000).

3. The weapon with which the crimes were committed was not found. The State introduced a rifle of the type believed to be used in the crimes, and it was identified as similar to a weapon with which McCoy was seen before and after the crimes. Introduction of such a replica is generally permissible. *Boyd v. State*, 264 Ga. 490, 491 (2) (448 SE2d 210) (1994). McCoy's reliance upon *Paxton v. State*, 160 Ga. App. 19, 23 (6) (285 SE2d 741) (1981), is misplaced. In that case, it was necessary for the State to prove that a real pistol was used, and not merely a toy pistol. Here, there is no question that a real rifle was used in the crimes, and it was not error to admit a replica of the actual weapon.

4. Allen testified that Wright told him that her home was being watched by Harden's "cousin Al." The testimony was admitted under the "necessity" exception to hearsay. See OCGA § 24-3-1 (b). Under that exception, there are two requirements: "necessity" and "particularized guarantees of trustworthiness." *Azizi v. State*, 270 Ga. 709 (2) (512 SE2d 622) (1999). "The first requirement is satisfied upon a showing that the declarant is deceased or unavailable, that the statement is relevant to a material fact, and that the statement is more probative than other evidence which may be offered," id., which is the case here. Although McCoy contends that there were insufficient guarantees of trustworthiness surrounding Wright's statement, the evidence showed that Allen was Wright's friend and employer, was seen by Wright as a mentor with whom she often discussed her problems, and that Wright had never told Allen anything he later found to be untrue. "Uncontradicted statements made to one in whom the deceased declarant placed great confidence and to whom she turned for help with her problems are admissible under the necessity exception." *Ward v. State*, 271 Ga. 648, 650 (2) (520 SE2d 205) (1999). It was not error to admit the statement.

5. Johnson, who was McCoy's girlfriend at the time of the crimes, cooperated with police. A month after McCoy was arrested, a dead bird was placed at Johnson's door, with a note stating: "Bitch, you testify, you die." McCoy moved in limine to exclude evidence of this

threat, and contends it was not properly admitted because he was incarcerated at the time the threat was made and it was in no way connected to him. However, McCoy's trial was the only proceeding in which Johnson was anticipated to testify at the time, and she also testified about another threat McCoy had made towards her. Admission of evidence of such a threat is in the discretion of the trial court. *Murray v. State*, 271 Ga. 504, 506 (5) (521 SE2d 564) (1999). And evidence of a threat to a witness by the defendant is relevant as showing an attempt to prevent a witness from testifying and avoid punishment for the crime. *Fugitt v. State*, 256 Ga. 292, 293-294 (1) (a) (348 SE2d 451) (1986). As McCoy's trial was the only proceeding to which a threat concerning Johnson's "testify[ing]" could apply, under the totality of the circumstances, the evidence of the threat was sufficiently linked to McCoy. See *Riden v. State*, 151 Ga. App. 654, 657 (1) (a) (261 SE2d 409) (1979). Compare *Fields v. State*, 260 Ga. 331, 333 (4) (393 SE2d 252) (1990).

6. Detective Fagler testified that during the investigation, witness Searcy told him that McCoy came to her home once on the night of the shooting, and later told him that McCoy came twice that night; she did not mention a rifle. After speaking with Rawls, Fagler spoke with Searcy again, secured a warrant for her arrest as a party to the crime of murder, and spoke separately with Bradley. Fagler testified that when he interviewed Searcy again, she realized that Fagler had spoken to Bradley and that Bradley "had told me the truth," and, according to Fagler, Searcy then "decided that she would tell me the truth." McCoy objected that this was only Fagler's opinion as to the truth, and the court overruled McCoy's objection. He now contends this testimony was improper bolstering of Searcy's earlier testimony. See *Bolden v. State*, 272 Ga. 1 (525 SE2d 690) (2000). However, Searcy had herself earlier testified that she had at least two interviews with Fagler before she told him "the truth" about all of McCoy's actions that night. Further, Fagler previously testified that he spoke with Bradley on the telephone when Searcy was in custody and that Bradley stated that he would come and tell Fagler "the truth about the gun being brought to the house." Thus, Searcy and Bradley themselves characterized this version of events as the truth, and it was not improper bolstering for Fagler to repeat Searcy's characterization. Additionally, Fagler later testified that the final statements of Searcy and Bradley were consistent and that he "felt that, in my opinion, she was being truthful about her involvement and what she knew about this homicide." McCoy objected and stated that it was improper for Fagler to bolster a witness by giving his opinion about

someone else's truthfulness. The court sustained this objection,[2] recognizing the distinction between the continuation of Searcy's and Bradley's own characterization of their final versions and Fagler's expression of opinion about the truthfulness of those he interviewed.

7. When police arrived at McCoy's apartment to question him, he answered the door, wielding a pistol, which he pointed at the officers. He immediately dropped it and, when questioned, stated that he answered the door in that manner because he heard that someone was going to shoot at his apartment because of the shooting at Wright's home. The trial court correctly denied his motion in limine to exclude this testimony, as it was relevant to show that McCoy might have reason to expect retribution for shooting Wright. See *Benford v. State*, 272 Ga. 348, 350 (3) (528 SE2d 795) (2000); *Nealy v. State*, 246 Ga. App. 752, 753 (1) (542 SE2d 521) (2000).

8. McCoy complains that Fagler improperly commented on his character by testifying that McCoy was arrested on charges involving a stolen gun and forgery. However, after the testimony, the court gave a curative instruction and McCoy neither objected to the curative instruction nor renewed his motion for a mistrial. Thus, the issue has not been preserved for appellate review. *Weems v. State*, 268 Ga. 515, 516 (2) (491 SE2d 325) (1997).

9. McCoy's girlfriend testified that she told McCoy that she believed he committed the crimes. McCoy objected and moved for a mistrial, the court instructed the jury to disregard the statement, and McCoy renewed his objection. " 'The granting of a motion for a mistrial is within the discretion of the trial court, and the trial court's ruling will not be disturbed when the trial court has taken remedial measures sufficient to ensure a fair trial.' [Cit.]" *Carruthers v. State*, 272 Ga. 306, 314 (7) (528 SE2d 217) (2000). The jury was instructed that it was to determine the facts of the case, and we do not find an abuse of discretion in the trial court's denial of a mistrial.

10. McCoy complains of several statements which he contends were impermissible hearsay. However, Johnson's recital of what her mother and Detective Fagler told her was admissible to explain why she went to the police after her initial delay. See *Collins v. State*, 273 Ga. 93, 96 (4) (538 SE2d 47) (2000). The telephone conversation between Bradley and another person, that Searcy reported, explained her actions in having the rifle removed from her home. The disposition of that weapon was relevant to the crimes charged, and, accordingly, the court did not err in allowing the testimony. See *Hampton v. State*, 272 Ga. 284, 286 (4) (527 SE2d 872) (2000). Fagler's testimony about what Bradley and Searcy told him concern-

---

[2] No further action was requested.

ing a conversation in which they speculated that McCoy may have done the killing, if error, was harmless as both Bradley and Searcy had previously testified to the same effect. *Felder v. State*, 270 Ga. 641, 646 (8) (514 SE2d 416) (1999).

11. Although McCoy contends that the testimony of Searcy and Bradley hypothesizing that McCoy may have been involved in the killing should have been excluded as speculative, testimony about that conversation was relevant to the disposition of the weapon. See Division 10, supra.

12. During deliberation, the jury asked the court to explain "how aiding and abetting relates to felony murder and aggravated assault?" McCoy requested that the court instruct the jury that "an accessory after the fact is not a party to the crime," and the court refused. The court noted that the requested charge assumed additional information that was not in the jury's question, particularly the time of the defendant's actions, and stated that it would not give any additional charge on accessory after the fact. The court recharged the jury on the law pertaining to parties to a crime (which included the statutory language concerning aiding and abetting), the defendant's knowledge of and participation in the crime, felony murder, and aggravated assault.

First, as the trial court noted, the requested recharge was not responsive to the jury's question. The recharge the court gave was responsive and the jury answered affirmatively when the court asked if the question was answered. See *Welch v. State*, 251 Ga. 197, 198 (2) (304 SE2d 391) (1983). Second, the court did not abuse its discretion in refusing the requested recharge. See *Jackson v. State*, 263 Ga. 468 (1) (435 SE2d 442) (1993). McCoy did not request the court to define "accessory after the fact" for the jury, but an accessory after the fact is guilty of the separate offense of obstruction of justice under OCGA § 16-10-24 and is not a party to the underlying crime. See *State v. Freeman*, 272 Ga. 813, 815 (2) (537 SE2d 92) (2000). And it is not error for the court to refuse a jury charge on a crime separate from that specified in the indictment. *State v. Hightower*, 252 Ga. 220, 223, fn. 2 (312 SE2d 610) (1984). Further, to the extent that McCoy's requested recharge sought to inform the jury that one is not a party to a crime who, after a crime has been completed, acts in concert with those who committed the crime, the court's charge properly covered the concept that one must aid and abet the commission of a crime to be considered a party to the crime. "It is not necessary to give the exact language of a request to charge when the applicable principles are fairly covered by the charge as given." *Carver v. State*, 262 Ga. 723 (2) (425 SE2d 657) (1993).

13. McCoy has failed to establish that counsel's assistance was deficient or that her performance prejudiced his defense. *Strickland*

*v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).[3]

*Judgments affirmed in part and vacated in part. All the Justices concur.*

DECIDED MARCH 28, 2001.

*Elaine T. McGruder*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Bettieanne C. Hart, Peggy R. Katz*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Tammie J. Philbrick*, Assistant Attorney General, for appellee.

---

[3] McCoy raises issues of trial counsel's failure to: (a) object to the State's reference in opening statement to an alleged connection between McCoy and a police officer convicted for corruption, thereby placing McCoy's character in issue; (b) object and move for a mistrial when the State referred in its opening statement to testimony that was never presented; (c) request a jury charge on accessory after the fact; (d) object to hearsay testimony from Yolanda Johnson; (e) object to the introduction of an alleged threat made to a State's witness on the ground of impermissible hearsay and violation of the best evidence rule; (f) move to exclude certain witnesses because of the State's discovery violations; (g) object to testimony by Detective Fagler because it was improper speculation; (h) object to testimony by Fagler which was irrelevant and placed McCoy's character in issue; (i) request a jury charge of reckless conduct as the underlying misdemeanor for involuntary manslaughter; (j) object to the trial court's failure to hold a hearing under Uniform Superior Court Rule 31.3 (B) on the admissibility of an alleged prior difficulty between McCoy and the victim; (k) object to misstatements in the State's closing argument; (l) introduce certain exculpatory evidence; (m) object to hearsay by Detective Fagler; (n) object to speculation by Fagler; (o) challenge the admissibility of McCoy's custodial statement; and (p) move for the State to disclose its confidential informant.