## A05A1596. HAMBRICK v. THE STATE.
### (629 SE2d 442)

SMITH, Presiding Judge.

Calvin B. Hambrick, a/k/a Antonio Dillard, was indicted by a Fulton County grand jury for rape, kidnapping, and two counts of aggravated assault against his girlfriend. A jury found him guilty on all counts, his amended motion for new trial was denied, and he appeals, asserting four enumerations of error. Finding no error, we affirm.

1. Hambrick asserts the general grounds. Construed to support the verdict, the evidence shows that the victim was brought to a hospital emergency room with significant injuries, including bruises, bites, and scratches all over her body, both eyes swollen shut, a soft spot on her skull, and swollen and injured legs. She eventually stated that she had been raped. She told the nurse that her boyfriend had seen her in a car with another man, dragged her out of the car into his car, and "started beating her like she was a man." The doctor who examined her confirmed her injuries, including a broken ankle, and testified that she told him "that she was talking to another male when her quote, unquote, boyfriend came up and assaulted her." He described her condition as "a very powerful injury. Whatever was used, whether it be fists or weapon, it was used in a very powerful way. A lot of pain, a lot of anguish, very grotesque appearance." He made the decision to transfer her to the Grady Hospital Rape Crisis Center.

The treating physician at Grady testified that the victim told him she was sitting with a male friend when Hambrick grabbed her and threw her into his car. He beat, bit, and threatened to kill her, then took her to his house where he held her against her will and raped her twice. A counselor at Grady testified that the victim gave her essentially the same account, adding that when Hambrick threatened to "kill her and dump her body off," she attempted to jump from the car, breaking her ankle. The victim's mother testified that when she saw the victim in the emergency room "she didn't look like my daughter. She was all swollen and she had bite marks all over her body, all over

her head, her buttocks, just all over her body. Her hair was pulled out from her head and she had black eyes. Her eyes were black and red. And her ankle was broken." The victim told her mother that Hambrick had beaten and raped her, taken her against her will to his apartment, held a gun to her head, and threatened to kill her if she called the police. She also testified at the preliminary hearing that Hambrick grabbed her by her arm and neck and threw her into his car. An audiotape of her statement to a police detective was played for the jury.

Hambrick bases his assertion that the evidence was insufficient primarily on the victim's recantation of her earlier statements. Before trial, the victim signed an affidavit prepared by Hambrick's counsel that recanted the charges, and told the prosecutor that she intended to testify that the rape and kidnapping did not occur. The victim wrote several letters to Hambrick in jail explaining that she had fabricated the story of rape and kidnapping because her parents had forbidden her to see Hambrick and she was pregnant with his child. Hambrick's aunt testified that the victim told her she had falsely accused Hambrick. At trial, the victim testified that she did not want to press charges, stating that she loved Hambrick and wanted to marry him so they could live together as a family. She testified that she attacked Hambrick in the car and that all her injuries, including the bites on her buttocks and inner thighs, were inflicted during the fight that she instigated.

"[T]he prior inconsistent statement of a witness is admissible as substantive evidence if the witness testifies at trial and is subject to cross-examination. [Cits.]" *Kinney v. State*, 271 Ga. 877, 880 (2) (525 SE2d 91) (2000). Here, as in *Kinney*, the victim's statements to doctors, a nurse, rape counselors, and her mother were corroborated by the physical evidence of her extensive injuries. Id. "[E]ven though a witness may recant on the stand, [her] prior inconsistent statements constitute substantive evidence on which the jury may rely." (Citation and footnote omitted.) *Gunsby v. State*, 248 Ga. App. 18 (1) (545 SE2d 56) (2001). "On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict. We do not weigh the evidence or determine witness credibility, but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*." (Citations and footnotes omitted.) *Peek v. State*, 259 Ga. App. 13, 14 (576 SE2d 31) (2002). The evidence was sufficient to enable a rational trier of fact to find Hambrick guilty beyond a reasonable doubt under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hambrick also contends that the trial court erred in admitting the "prior consistent statements" of the victim. But it is apparent from the transcript that the statements complained of were prior

*inconsistent* statements. As noted above, the victim told numerous witnesses that Hambrick kidnapped, beat, bit, and raped her, but at trial she recanted her earlier statements in detail. Under *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982), "a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes." Id. at 862. The victim took the stand and was subject to cross-examination, and her earlier statements accordingly were substantive evidence of Hambrick's guilt.

3. Finally, Hambrick complains that the trial court erred in failing to grant a mistrial when the prosecutor made an impermissible "future dangerousness" argument to the jury by stating that the victim "needs protection." We disagree.

> It is manifestly improper for a prosecutor to argue to the jury during the guilt-innocence phase of any criminal trial that if found not guilty, a defendant poses a threat of future dangerousness. A defendant's probable future behavior is not relevant where, as here, the jury decides only the defendant's guilt or innocence. A prosecutor argues future dangerousness when the prosecutor asserts there will be more victims if the defendant is not found guilty, or the community or witnesses will be endangered if the defendant is not found guilty.

(Citations and punctuation omitted.) *Fulton v. State*, 278 Ga. 58, 64-65 (8) (597 SE2d 396) (2004). The Georgia Supreme Court has disapproved argument that the defendant is a menace and a cancer that needs to be cut out "to protect the community," including the jurors themselves since there were "no walls around" the defendant's neighborhood to keep him away from the jurors' neighborhoods, id.; that the defendant must be stopped "before someone else in our community is [defendant's] victim. Please, please stop him," *Mason v. State*, 274 Ga. 79, 80, n. 2 (548 SE2d 298) (2001); that if the jury refused to convict the defendant could "do it again, get his gun back, and ride down on the elevator with the jury as they leave the courthouse." (Punctuation omitted.) *Wyatt v. State*, 267 Ga. 860, 864 (2) (b) (485 SE2d 470) (1997).

This court has likewise disapproved argument that the defendant was "a disaster waiting to happen," that the crimes charged were "intermediate steps," and that the jury had an opportunity to "intervene" before "something bad" happened, such as a mass murder similar to that which occurred at Columbine High School, *Williams v. State*, 261 Ga. App. 511, 515-517 (3) (583 SE2d 172) (2003); that the

defendant was a "predator" and repeat offender who would offend again against other women, and "[i]t's time for the assaults to stop. It's time for the nightmares to come to an end." *Nickerson v. State*, 248 Ga. App. 829, 831-832 (2) (a) (545 SE2d 587) (2001); and "pronounced and persistent improper remarks" that the defendant should be sent to prison "because he had not been effectively punished for committing . . . similar transactions and because the community would not otherwise be safe in the future." *Collier v. State*, 266 Ga. App. 345, 355 (2) (b) (596 SE2d 795) (2004).

While the prosecutor here stated that the victim "needs protection," and Hambrick's counsel objected that this statement argued future dangerousness, the argument as a whole was not addressed to Hambrick's "probable future behavior." (Citation and punctuation omitted.) *Fulton*, supra, 278 Ga. at 65 (8). Reading the statement in context, it is apparent that the prosecutor was addressing the central contested issue in the trial: the victim's recantation of her earlier statements implicating Hambrick and her trial testimony that Hambrick did not rape or kidnap her and that she was the aggressor in a fight rather than the victim of an assault.

Before the statement complained of, the prosecutor pointed out the inconsistencies in the victim's recantation and described it as a "fabrication." After discussing the victim's affidavit and letters, the prosecutor recounted conversations with the victim after she decided to recant, including a dialogue in which the prosecutor asked how the victim could

> be in love with somebody who will brutally abuse you when you['re] pregnant with their child? But I want him to be a father to my son. What kind of father will he make? What kind of example will he make? Do you want your son to grow up and do this to some other woman? And tears fell. But I love him, I love him.

She described the victim as someone who could not protect herself "for whatever reason, whether she believes she's in love with him, she thinks she's in love with him, she's got low self-esteem or whatever." The prosecutor then made the statement complained of, imploring the jury not to decide that "it's between him and her," stating "it's gotten bigger" and the victim "needs protection." Immediately after the statement complained of, the prosecutor referred to the testimony of the rape counselor regarding the "cycle of domestic violence," and argued that the victim's assertions that she loved Hambrick and was going to marry him constituted the "honeymoon phase" of the cycle. Although the statement complained of could be construed as a

mention of Hambrick's future dangerousness, the prosecutor's argument was not addressing that issue but rather seeking to explain the reasons for the victim's recantation at trial.

"A court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting for lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." (Citation and punctuation omitted.) *Hammond v. State*, 260 Ga. 591, 597 (5) (398 SE2d 168) (1990). The prosecutor's argument, taken as a whole, shows a reasonable explanation for her remark other than an argument of future dangerousness, and we will not conclude that it was intended as such or reverse the trial court's denial of Hambrick's motion for a mistrial.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

## ON MOTION FOR RECONSIDERATION.

On motion for reconsideration, Hambrick contends that we failed to discuss in sufficient detail one of his enumerations of error dealing with the victim's recantation. We do so now.

As we noted in the original opinion, the victim recanted her accusation against Hambrick in detail, giving numerous different reasons for the recantation, including that her parents had forbidden her to see Hambrick, that she was pregnant with his child, and that she loved Hambrick and wanted to marry him and live together as a family. She also testified that she was angry with Hambrick because she saw him with another woman whom she believed to have a child by Hambrick. She also testified repeatedly that she was coerced into giving false testimony by her father and her mother, who threatened to throw her out of the house; by the prosecutor, who threatened to arrest her; and by hospital personnel, who allegedly asserted that the hospital would pay her bills if she accused Hambrick of rape and kidnapping.

The trial court allowed much of this evidence over objection, for the purpose of allowing the victim to explain why she made her original allegations against Hambrick. Hambrick complains that the victim was not allowed to testify that "her mother's boyfriend," otherwise unidentified, also threatened her with regard to her testimony. This individual was never identified by name and did not testify, although it appears that he was present in the courtroom at some time. But during her cross-examination, the victim testified twice, over objection, that this individual threatened her. Only after the third repetition of the question, made despite repeated objections by the prosecutor, did the trial court sustain the objection to Hambrick's further questioning of the victim regarding the threats.

Hambrick correctly asserts that "[w]here testimony as to a matter tending to discredit a witness has been introduced in evidence, or drawn from him on cross-examination, it is proper to permit him to explain the matter in order to rebut its discrediting effect." (Citation and punctuation omitted.) *Bivins v. State*, 200 Ga. 729, 741 (8) (38 SE2d 273) (1946). Here, the victim was permitted to explain her recantation in exhaustive detail, including the recounting of threats from numerous individuals including her "mother's boyfriend." The trial court's sustaining of the State's objection, as Hambrick attempted to elicit yet another restatement of this testimony, was well within its inherent power to control the examination of witnesses and to disallow repetitive questions. *Jackson v. State*, 270 Ga. 494, 498 (7) (512 SE2d 241) (1999). Moreover, "[i]t is axiomatic that the exclusion of evidence which is merely cumulative is not reversible error." (Citation and footnote omitted.) *Brown v. State*, 268 Ga. App. 24, 27-28 (2) (601 SE2d 405) (2004).

*Hambrick's motion for reconsideration is therefore denied.*

DECIDED MARCH 14, 2006 —
RECONSIDERATION DENIED APRIL 13, 2006 —

*Drew Findling, Cris E. Schneider, Elizabeth G. Rankin*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Anne E. Green, Assistant District Attorneys*, for appellee.