**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 8, 2013**

# In the Court of Appeals of Georgia

A13A1465. BROWN v. THE STATE.                                    DO-056 C

DOYLE, Presiding Judge.

Johnny L. Brown was convicted of terroristic threats,[1] six counts of aggravated assault,[2] possession of a firearm during the commission of a felony,[3] and criminal damage to property in the second degree.[4] After the trial court denied his motion for new trial, Brown filed this appeal, arguing that (1) his trial counsel was ineffective; and (2) the evidence was insufficient. For the reasons that follow, we affirm.

---

[1] OCGA § 16-11-37 (a).

[2] OCGA § 16-5-21 (a) (2) & (3).

[3] OCGA § 16-11-106 (b) (1).

[4] OCGA § 16-7-23 (a) (1).

Viewing the evidence in the light most favorable to the verdict,[5] the record shows that about two weeks prior to the incident in question, Shanteria Miller and Brown had ended their relationship, angering Brown. At the time, Miller was living with her parents, sister, and her young daughter at 2285 Burdett Ridge Drive. Although the two had not seen each other since the break-up, Miller and Brown continued to be in contact via phone calls and text messages, including on the evening in question.

In the early morning hours of November 8, 2007, Miller received numerous phone calls from Brown, and after avoiding his calls, she finally answered. Miller testified that Brown wanted to know if she was at home, which she denied, and he then told her he was going to kill her and was on the way to her house. Miller got dressed, dressed her young daughter, and left to go to her brother's house without

---

[5] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). "On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict. We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*[, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979)]. This same standard applies to our review of the trial court's denial of [the defendant's] motion for new trial. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Footnotes omitted.) *Stephens v. State*, 247 Ga. App. 719 (545 SE2d 325) (2001).

2

telling her mother or sister because she believed that Brown would not injure them if she was not at home.

Miller then called her across-the-street neighbor, Diane Pritchett , and asked her to watch her house and make sure that Miller's mother left to go to work without incident. She also warned Pritchett to be looking out for Brown's car, which she described as a yellow and brown Ford Ltd. Pritchett called Miller back to confirm when she should be watching for Miller's mother and was on the phone with Miller and looking out her window when she saw the car described by Miller drive up to Miller's house and saw the driver firing a gun from the vehicle. Miller told Pritchett to call 911, which Pritchett did.

Miller continued to her brother's house, but on the way, she called her house to check on her mother and sister; when she arrived at her brother's house and explained the situation, they both returned to the scene to check on their family. When they arrived, Miller saw holes in the house and emergency personnel were on the scene. While Miller was standing outside surveying the scene, she received numerous text messages from Brown, some of which were apologetic, some of which were threatening, so she showed the phone to police .

3

Miller's mother, Sheryl, testified that she and her six-year-old daughter were at 2285 Burdett Ridge Drive on the morning in question, and she had gone downstairs to the kitchen to prepare breakfast; before she could return upstairs, the shooting began. Sheryl was unsure what was happening at first, and she was frightened by the popping sounds, debris, and smoke from the bullets; she called her husband, who instructed her to call 911, which she did. Miller's brother testified that his mother was crying when he arrived and that spent firearm shells were everywhere. A police officer who arrived at the scene testified that multiple gunshot holes were in the side of Miller's home. Another officer testified that the shell casings were from an AK-47 assault rifle.

Sharon Johnson, who was babysitting at a nearby home during the incident, heard the gunshots and came out to find that her vehicle, which was parked on the street, had been hit by a car that left yellow paint in the damaged area, and her car alarm was going off.

Miller testified that she and Brown reunited as a couple after the incident because she thought it would protect her family from further harm. She testified that

4

she talked to him repeatedly while he was in jail awaiting trial, and he tried to get her to convince the witnesses to refuse to testify.[6]

After trial, the jury found Brown guilty of all counts, and he filed a motion for new trial, which was later amended. The trial court denied the amended motion after a hearing, and this appeal followed.

1. Brown contends that the evidence was insufficient to support the verdict.

(a) First, Bown contends that the evidence was insufficient to support his convictions because the evidence did not exclude every reasonable hypothesis except for guilt. We disagree.

In support of this, Brown cites to Miller's testimony in which she states that another ex-boyfriend had threatened to kill her because he did not want her to date someone else. Miller, however, testified that the individual did not know that she was dating Brown until after the incident in question and did not make the death threat until after the incident. Brown also cites to the facts that the car was never found, no firearm was recovered, and no one at the scene could visually identify the shooter. He

---

[6] The State introduced numerous recordings of phone calls between Brown, Miller, and other parties, but the recordings were not included in the record on appeal.

also points to his testimony, the testimony of his father, and the testimony of his friend, who all contended that Brown was not the shooter.

Nevertheless, the evidence as stated above was sufficient to support the jury's verdict that Brown committed the acts in question. Pritchett testified that a vehicle fitting the description of Brown's car was driven by the shooter, and Miller testified that Brown had threatened to come to her house and kill her earlier that morning. Furthermore, Miller received text messages from Brown later that morning apologizing "for what happened," which supports Miller's version of events. Under these circumstances, the jury was authorized to believe Miller and to conclude that Brown was the shooter. Accordingly, the evidence was sufficient to support the verdict.[7]

---

[7] See *Jones v. State*, 318 Ga. App. 26, 29 (1) (a) (733 SE2d 72) (2012) (holding that evidence was sufficient even if the witnesses' testimonies, which constituted the bulk of the evidence against the defendant, were inconsistent because "any alleged inconsistencies in the evidence and issues of the witnesses' credibility 'were for the jury, not this Court, to resolve'"). Compare with *Patterson v. State*, 287 Ga. App. 100, 103 (2) (650 SE2d 770) (2007) (reversing conviction because no testimony regarding the identity of the alleged male driver of a car apart from registration listing defendant's sister as the owner and both sister and defendant were unknown to the driver).

(b) Next, Brown argues that the evidence was insufficient to support his conviction for criminal damage to property in the second degree because there was no evidence that the damage to the neighbor's vehicle was intentional.

"OCGA § 16-7-23 (a) (1) . . . provides that a person commits criminal damage to property in the second degree when he intentionally damages any property of another person without his consent and the damage thereto exceeds $ 500.00."[8]

> [A] person is not presumed to act with criminal intent. [Nevertheless,] the factfinder may consider the circumstances surrounding the act for which the accused is being prosecuted in determining whether the requisite intent is manifested by the circumstances, and this court will not disturb that factual determination unless it is contrary to the evidence and clearly erroneous.[9]

Brown contends that even assuming he was the driver of the car that struck the Johnson's vehicle while it was parked on the side of the street, the State failed to submit any evidence to support a finding that the damage to the vehicle was other than accidental. Nevertheless, the jury was properly charged on the offense of criminal damage to property, including that the requisite intent, and the facts

---

[8] (Punctuation omitted.) *Youmans v. State*, 270 Ga. App. 832, 837 (2) (608 SE2d 300) (2004).

[9] *Burden v. State*, 187 Ga. App. 778, 779 (1) (371 SE2d 410) (1988).

7

presented support the verdict because the jury was authorized to find that as a result of his flight from his intentional criminal actions of firing a firearm into the Millers's home, he damaged Johnson's vehicle.[10]

(c) Finally, Brown argues that the evidence was insufficient to support his conviction for terroristic threats because the State failed to present corroborating evidence. We disagree.

Brown contends that because no one besides Miller heard his alleged threat to come to her house and kill her on the morning of the incident, the State failed to present sufficient evidence to support his conviction for terroristic threats.

> A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence with the purpose of terrorizing another. The crime of making terroristic threats focuses solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to terrorize. But no person shall be convicted of the offense of terroristic threats based on the uncorroborated testimony of the person to whom the threat was

---

[10] See *Helton v. State*, 216 Ga. App. 748, 749 (455 SE2d 848) (1995) (upholding conviction of defendant who claimed accident when he hit various cars while attempting to evade police). "Every person is presumed to intend the natural and probable consequences of his conduct, particularly if that conduct [is] unlawful and dangerous to the safety or lives of others." *Keye v. State*, 136 Ga. App. 707, 708 (1) (222 SE2d 172) (1975).

8

communicated. OCGA § 16-11-37 (a). Nevertheless, it is well established that the quantum of corroboration need not in itself be sufficient to convict, but need only be that amount of independent evidence which tends to prove that the incident occurred as alleged. Slight circumstances may be sufficient for corroboration and the question of corroboration is one solely for the jury. If there is any evidence of corroboration, this court will not go behind the jury verdict and pass on its probative value.[11]

In this case, the threat was corroborated by Pritchett's testimony that a vehicle fitting the description of that owned by Brown was the vehicle driven by the shooter and Brown's text messages to Miller after the incident.[12] "'Slight circumstances may be sufficient for corroboration[,] and the question of corroboration is one solely for the jury. If there is any evidence of corroboration, this court will not go behind the jury verdict and pass on its probative value.'"[13]

2. Brown also contends that trial counsel was ineffective.

---

[11] (Citation and punctuation omitted.) *Schneider v. State*, 312 Ga. App. 504, 506 (1) (718 SE2d 833) (2011).

[12] See, e.g., *Wilson v. State*, 291 Ga. App. 263, 264 (1) (661 SE2d 634) (2008) (testimony that a gun was recovered from the area corroborated victim's testimony of threats).

[13] Id.

9

To establish ineffective assistance of counsel under *Strickland v. Washington*,[14] [Brown] must prove (1) that h[is] trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced h[is] defense that a reasonable probability exists that the result would have been different but for the deficiency. The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous. Additionally, a court is not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one.[15]

The decisions on which witnesses to call, whether and how to conduct cross-examination, which jurors to accept or strike, what trial motions should be made, and all other strategic and tactical decisions are the exclusive province of counsel after consultation with the client. Trial counsel's strategic decisions made after thorough investigation are virtually unchallengeable. They provide no grounds for reversal unless

---

[14] 466 U.S. 668, 687 (80 LE2d 674, 104 SCt 2052) (1984).

[15] (Punctuation and footnotes omitted.) *Simons v. State*, 311 Ga. App. 819, 821 (2) (717 SE2d 319) (2011), quoting *Jackson v. State*, 284 Ga. App. 619, 627-628 (11) (644 SE2d 491) (2007).

such tactical decisions are so patently unreasonable that no competent attorney would have chosen them.[16]

(a) First, Brown argues that trial counsel was ineffective because he seated an unqualified juror. Specifically, Brown contends that Juror 21 answered affirmatively when trial counsel asked the venire to indicate "if you have such strong feelings about the use of guns that it would overrule your ability to be fair and listen to the evidence in this case . . . ." Juror 21 indicated that she had such feelings, and Brown contends that trial counsel's failure to further voir dire or rehabilitate Juror 21 before seating her on the jury constituted ineffective assistance of counsel because she was admittedly unable to render a fair verdict when she was placed on the jury.[17] We disagree.

"It is axiomatic that a verdict rendered by an illegally constituted jury must be set aside. . . . In the absence of a strategic motive, a defendant whose attorney fails to attempt to remove biased persons from a jury panel is prejudiced. Moreover, even

---

[16] (Punctuation omitted.) *Abernathy v. State*, 278 Ga. App. 574, 586 (3) (b) (630 SE2d 421) (2006).

[17] During Juror 21's individual voir dire, she indicated that she had two very good friends who were police officers, but she did not believe her relationship with them would affect her ability to be fair.

11

without a showing of actual bias, prejudice may be implied in certain egregious situations."[18]

Even presuming that trial counsel performed deficiently by failing to inquire further or to rehabilitate Juror 21, Brown has failed to establish prejudice under *Strickland*. It is true that Juror 21 answered affirmatively to the question, however, she did not answer affirmatively when asked if she had formed or expressed an opinion as to Brown's guilt or innocence, did not answer affirmatively when asked if she had any prejudice or bias for or against Brown, and did not indicate otherwise than that her mind was perfectly impartial between the State and Brown.

The question raised to the venire was whether the potential jurors' feelings about guns would affect their ability to be fair, and although the crime involved the use of a gun, there was no testimony regarding Brown's ownership or possession of guns generally, and his defense was that he denied being the shooter. Moreover, many of the cases cited by Brown in which prejudice is presumed based solely on the juror's statements during venire include relationships that would constitute a for-

---

[18] (Citations and punctuation omitted.) *Kirkland v. State*, 274 Ga. 778, 780 (2) (560 SE2d 6) (2002).

cause strike,[19] such as *Kirkland v. State*, in which the Georgia Supreme Court presumed prejudice with regard to stockholders of the victim company who were seated on the jury.[20] In any event, based on the record in this case, we decline to hold that Juror 21's affirmative answer to this question falls into the same category as a juror who is related to a party or who has a pecuniary interest in a party.[21] Because Brown failed to sufficiently show prejudice at the motion for new trial hearing, he has failed to establish ineffective assistance of counsel as to this issue.

(b) Brown also argues that counsel was ineffective for failing to object to the testimony of a domestic violence expert because the testimony was irrelevant and prejudicial. We disagree.

Brown's defense centered on his contention that he did not commit the acts in question, and he attacked Miller's truthfulness on the stand by eliciting testimony regarding her continued relationship with him after the events in question. The domestic violence expert testified about how cycles of violence occur in such

---

[19] See OCGA § 15-12-163 (b).

[20] See *Kirkland*, 274 Ga. at 780 (2).

[21] Compare with id.; *Titel v. State*, 981 So.2d 656, 659 (La. Ct. App. 2008) (persuasive authority).

relationships and explained why Miller could have continued to be in a relationship after the incident if she indeed believed that Brown was the perpetrator. While Brown contends that trial counsel should have objected because the State failed to lay the proper foundation to admit the expert testimony, Miller had testified that the two engaged in physical violence and verbal abuse, even if those episodes were not extensive. "[E]xpert testimony is admissible to explain the behavior of a domestic violence victim who does not report abuse or leave the abuser."[22] Brown attacked Miller's credibility, and therefore, because the evidence was admissible to counter Brown's credibility attack, and "counsel's failure to make a meritless objection [to the admission of this expert testimony] does not constitute deficient performance."[23]

(c) Finally, Brown argues that counsel was ineffective for failing to object to the State's "future dangerousness" argument. We disagree.

During argument, the State contended that Miller was "trying to get into that honeymoon phase [with Brown] however she can. She wants to be out of that

---

[22] See *Alvarado v. State*, 257 Ga. App. 746, 748 (2) (572 SE2d 18) (2002).

[23] (Punctuation omitted.) *Russell v. State*, 322 Ga. App. 553, 557 (3) (c) (745 SE2d 774) (2013). See also *Parrish v. State*, 237 Ga. App. 274, 277 (2) (i) (514 SE2d 458) (1999) (because defendant placed victim's credibility at issue, expert testimony regarding abusive relationships was relevant).

14

attention phase, because he's all attention. When the explosion happens, we saw what happened. He shoots up the house. What's going to happen next time?" Trial counsel did not object to this statement, and the State moved on to argue why Brown's contention that another individual committed the acts was not believable and how various pieces of evidence corroborated Miller's testimony that Brown threatened her.

> Our Supreme Court has repeatedly condemned argument about a defendant's future dangerousness during the guilt-innocence phase of a trial because it simply is irrelevant to the question of whether, under the facts introduced into evidence, the defendant is guilty beyond a reasonable doubt of the crime charged.[24]

Pretermitting whether the evidence against Brown was overwhelming, the trial court correctly denied the motion for new trial on this ground. The prosecutor's remark was an isolated comment during his explanation of the cycle of violence within Brown's and Miller's relationship. The State's single, off-hand comment does

---

[24] (Punctuation omitted.) *Williams v. State*, 261 Ga. App. 511, 516 (3) (583 SE2d 172) (2003). See also *Reed v. State*, 291 Ga. 10, 16 (4) (b) (727 SE2d 112) (2012).

not rise to the level of egregiousness necessary to establish prejudice under *Strickland*.[25]

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[25] See *Hambrick v. State*, 278 Ga. App. 768, 771-772 (3) (629 SE2d 442) (2006). Compare with *Williams*, 261 Ga. App. at 517-518 (3).