## S04A0548. FULTON v. THE STATE.
(597 SE2d 396)

BENHAM, Justice.

Frederick Lashun Fulton appeals the judgment of conviction entered on the jury verdicts finding him guilty of malice murder, aggravated battery and possession of a firearm during the commission of a crime in connection with the death of Tirus Q. Stone in June 1997. After reviewing the appellate record, we affirm appellant's convictions for malice murder and possession of a firearm during the commission of a crime and vacate the conviction and sentence for aggravated battery.

1. Tirus Q. Stone was killed on June 25, 1997, as a result of multiple gunshot wounds inflicted by 12-gauge shotgun slugs fired from a sawed-off pump shotgun with pistol grip from a distance of about ten feet.[1] He suffered three gaping wounds to his chest, upper left abdomen and right hip, as well as a wound that destroyed his

---

[1] The victim was killed on June 25, 1997. On September 26, 1997, the Fulton County grand jury returned a true bill of indictment charging appellant with malice murder, felony murder (possession of a firearm by a convicted felon), felony murder (aggravated assault), aggravated assault, aggravated battery, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a crime. Appellant's trial on the counts not involving his status as a convicted felon took place September 13-14, 1999, and concluded with the jury finding appellant guilty on those five counts. Appellant's sentences of life imprisonment for malice murder and consecutive sentences of twenty years for the aggravated battery and firearm possession convictions were filed on October 13, 1999. The two charges involving appellant's status as a convicted felon were dead-docketed on September 29, 1999. After the trial court denied an amended motion for new trial, appellant filed an appeal in this Court which was dismissed because the notice of appeal was not timely filed. *Fulton v. State*, 277 Ga. 126 (587 SE2d 20) (2003). Upon return of the case to the trial court, appellant was granted an out-of-time appeal on September 22, 2003, and his motion for new trial, filed the same day, was denied on October 17, 2003. A notice of appeal was timely filed on October 23,

right elbow. The medical examiner who performed the autopsy described the chest wound as not instantaneously fatal and each of the hip and abdomen wounds as "significant[ly] lethal" and "lethal." He opined the damage to the victim's right elbow was caused by a slug that hit the elbow and then caused the lethal hip wound.

A security officer employed by the Atlanta apartment complex at which the shooting occurred testified he heard a man say, "M. . .F. . ., I'm going to kill you," heard a loud shot followed by the victim pleading not to be shot again, and then heard the shotgun pumped and fired again. The witness described the killer as wearing a dark ski mask, white shirt and dark shorts, and carrying a sawed-off pump shotgun similar to the one displayed at trial. A friend of the victim testified he had been robbed at gunpoint and forced to strip down to his underwear by appellant, who was wearing a white shirt and dark shorts, the night before the victim was killed. This witness saw the shooting at issue and identified appellant as the shooter based on the fact the shooter was wearing the same clothing appellant had worn the night before when he had robbed the witness. Appellant's sister testified she saw appellant with a shotgun similar to that shown to her at trial the day after the victim was killed. She also saw him in possession of "green bullets," identified by another witness as shotgun shells. Appellant's sister testified appellant told her he had worn a ski mask and shot the victim because he believed the victim was going to kill appellant on behalf of the person appellant had robbed and humiliated the night before. The evidence was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that appellant was guilty of malice murder, aggravated battery, and possession of a firearm during the commission of a crime. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends the trial court erred when it imposed a 20-year sentence for aggravated battery because the conviction for aggravated battery merged as a matter of fact into the malice murder conviction.

"A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by . . . rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof." OCGA § 16-5-24 (a). The indictment alleged appellant had both disfigured the victim's body and deprived the victim of the use of his elbow, "having accomplished said act by shooting off the arm" of the victim. The medical examiner's testimony

that the shot which resulted in the lethal wound to the hip area initially struck and damaged the victim's elbow establishes that the same act caused the aggravated battery and the victim's death, and that the same evidence used to prove the aggravated battery was used to prove the malice murder. See *Drane v. State*, 265 Ga. 255 (9) (455 SE2d 27) (1995) (aggravated battery does not merge where act resulting in aggravated battery was independent of the act causing death); *Fitzpatrick v. State*, 268 Ga. 423 (1) (489 SE2d 840) (1997) (aggravated assault merges into malice murder as a matter of fact when evidence used to prove the former is the same as that used to prove the latter). See also *Braley v. State*, 276 Ga. 47 (26) (572 SE2d 583) (2002) (aggravated battery resulting in throat disfiguration caused by repeated stabbing merged into malice murder where fatal wound was stab wound to the throat); *Lucas v. State*, 274 Ga. 640 (18) (555 SE2d 440) (2001) (aggravated battery resulted from non-lethal shot to arm and shoulder). Accordingly, the aggravated battery conviction merged into the malice murder conviction as a matter of fact and both the conviction and the sentence imposed for aggravated battery must be vacated. *Braley v. State*, supra, 276 Ga. 47 (26); *Fitzpatrick v. State*, supra, 268 Ga. 423 (1).

3. Appellant maintains the trial court committed reversible error when it admitted the testimony of the witness who said appellant, wearing the same clothing as the man who killed the victim, had robbed him the night before the victim was killed. At trial, appellant objected to the testimony because the State had not given the ten-day pre-trial notice required by Uniform Superior Court Rule 31.1 for the presentation of evidence of similar transactions or occurrences, and because the trial court had not conducted a hearing on the subject. The trial court admitted the testimony as res gestae evidence, which is not subject to the notice and hearing requirements of USCR 31.1. USCR 31.3 (E).

We agree with the trial court that the testimony was admissible, but for a different reason. The challenged testimony was evidence of appellant's motive for shooting the victim: appellant believed the witness had asked the victim to kill appellant because appellant had robbed and humiliated the witness. "Evidence of the defendant's motive is relevant, even though it may incidentally place the defendant's character in evidence, and evidence of motive is not subject to the notice and hearing requirements of Uniform Superior Court Rules 31.1 and 31.3." *Fann v. State*, 275 Ga. 756, 757 (3) (571 SE2d 774) (2002). The trial court did not err when it admitted the testimony since it showed appellant's motive for shooting the victim.

4. Appellant maintains his convictions must be reversed and a new trial ordered because the trial court instructed the jury that

intent to kill could be inferred from evidence appellant used a gun to kill the victim. In *Harris v. State*, 273 Ga. 608 (2) (543 SE2d 716) (2001), this Court concluded it was error in a murder trial for the trial court to instruct the jury it could infer the intent to kill from the use of a deadly weapon in the manner in which the weapon is ordinarily used by a person of sound mind and discretion who acted intentionally and without justification. See *Cochran v. State*, 276 Ga. 283 (2) (576 SE2d 867) (2003). Compare *Ross v. State*, 276 Ga. 747 (2) (583 SE2d 850) (2003) (giving of *Harris* charge is harmless error where defendant convicted of felony murder). Where a defendant is convicted of malice murder, giving the charge disapproved of in *Harris* is harmless error where the evidence of malice is so overwhelming that it is highly probable the charge did not contribute to the verdict. *Quintana v. State*, 276 Ga. 731 (5) (583 SE2d 869) (2003); *Smith v. State*, 276 Ga. 263 (5) (577 SE2d 548) (2003); *Roberts v. State*, 276 Ga. 258 (6) (577 SE2d 580) (2003). Where, as here, the evidence established the defendant pulled a gun and repeatedly shot the victim without warning or provocation, the evidence of malice is overwhelming and renders the giving of the erroneous *Harris* charge harmless error. *Stockford v. State*, 276 Ga. 241 (2) (575 SE2d 889) (2003); *Brown v. State*, 276 Ga. 103 (2) (575 SE2d 505) (2003).

5. Appellant maintains the trial court erred when it failed to grant appellant's motion for mistrial after appellant's character purportedly was impermissibly placed in issue by the arresting officer's testimony that, at the time he arrested appellant, the officer had an "A.P.D. picture [of appellant] where he was booked in before." A reference to the fact that a photograph of a defendant was in police records prior to the defendant's arrest for the crime for which he is being tried does not place the defendant's character in issue. *White v. State*, 267 Ga. 523 (6) (481 SE2d 804) (1997); *Savage v. State*, 264 Ga. App. 709 (1) (592 SE2d 188) (2003). Accordingly, the trial court did not err when it denied the motion for mistrial.

6. Appellant next maintains the trial court erred when it denied his motion for mistrial after appellant's character allegedly was impermissibly placed in issue by the testimony of appellant's sister on cross-examination that, three weeks before police came to her home looking for appellant in connection with this crime, she had called police to report appellant had pointed a gun at her, conduct unrelated to the charges being tried. Defense counsel moved for a mistrial on the ground that the witness's testimony was non-responsive, impugned appellant's character, and the prejudice could not be overcome by a curative instruction. The trial court denied appellant's motion for mistrial.

The testimony at issue was not responsive to the question posed[2] and made the jury aware of prior bad acts purportedly committed by appellant. Where a witness injects the defendant's character into issue by referring to a prior act of misconduct in an answer not responsive to the question asked and the trial court instructs the jury to disregard the unresponsive answer, it is not error for the trial court to deny a motion for mistrial. *Woods v. State*, 233 Ga. 495, 498 (212 SE2d 322) (1975); *Roaderick v. State*, 257 Ga. App. 73, 75 (570 SE2d 382) (2002). See *Pless v. State*, 260 Ga. 96 (2) (390 SE2d 40) (1990). See also *Williams v. State*, 269 Ga. 827 (5) (504 SE2d 441) (1998); *Eagle v. State*, 264 Ga. 1 (2) (440 SE2d 2) (1994) (finding the non-responsive answer did not improperly place character in evidence and court which took corrective action did not abuse discretion in denying mistrial). Cf. *Hansley v. State*, 267 Ga. 48 (3) (472 SE2d 305) (1996) (holding that a non-responsive answer that impacts negatively on defendant's character does not improperly place defendant's character in issue). In the case at bar, defense counsel informed the trial court a curative instruction would not be sufficient, and none was given. While the better practice is to deny the motion for mistrial after instructing the jury to disregard the non-responsive answer, we conclude the trial court did not abuse its discretion in denying a mistrial where trial counsel declined to have a curative instruction given.

7. Appellant contends the judgment of conviction should be reversed in light of alleged prosecutorial misconduct in the closing arguments. Appellant asserts the prosecuting attorney improperly stated his personal belief in the credibility of one of its witnesses and referred to appellant's future dangerousness during his closing argument. Trial counsel did not voice an objection to either argument. The failure to object at trial precludes this Court's consideration of the merits of the contentions concerning the propriety of the closing argument since, "[i]n the appeal of a non-capital case in either appellate court, the defendant's failure to object to the State's closing argument waives his right to rely on the alleged impropriety of that argument as a basis for reversal." *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999).

8. Lastly, appellant contends he is entitled to a new trial because he was not afforded the effective assistance of counsel. In order to prevail on his claim, appellant must show deficient performance on the part of counsel and prejudice to his defense resulting from the

---

[2] Defense counsel had asked, "Is it not true, Ma'am, when the detectives came over to the house, they didn't know if they were looking for your brother, the third, or your father, the junior, they didn't know, did they?"

deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Appellant cites four examples of trial counsel's purported deficient performance that prejudiced appellant.

Appellant first contends counsel erred by failing to request a mistrial or curative instructions when appellant's sister stated on cross-examination that she had gotten along with appellant until he "got into guns and got into pulling guns out on me and my brother and threaten[ing] to shoot [us]," and that their mother had "put [appellant] out" because appellant had tried to stab the witness. The challenged testimony came at the conclusion of a dialogue between the witness and defense counsel on the strained relationship between appellant and his sister.[3] Since the character testimony was elicited by defense counsel and was responsive,[4] it is unlikely that the trial court would have granted a mistrial or issued curative instructions had trial counsel voiced an objection to the answer his question elicited. See *Crozier v. State*, 263 Ga. 866 (3) (440 SE2d 635) (1994). Accordingly, we conclude the failure to seek either of those remedies did not constitute deficient performance.

Appellant next maintains trial counsel was ineffective when counsel failed to object to the testimony of an officer who had an arrest warrant for appellant for the murder at issue and interviewed appellant's sister. The officer testified he "knew" who the perpetrator of the crime was before he took a statement from appellant's sister in which she told him where appellant could be found, and that he had informed the fugitive squad of an address and told them "this active warrant that [appellant], the murderer in the shooting, was located there." Appellant contends the officer's testimony was an inadmissible comment on the ultimate issue and thereby invaded the province of the jury. Assuming without deciding that the officer's testimony was a statement of opinion on the ultimate issue and that the failure to object constituted deficient performance on the part of trial counsel, appellant has not established the "prejudice prong" — he has not shown that the deficient performance was so prejudicial to his defense that, but for the deficiency, there was a reasonable probability that the outcome of the trial would have been different. *Mason v. State*, 274 Ga. 79 (2) (548 SE2d 298) (2001). Accordingly, the trial court did not err in concluding trial counsel was not ineffective.

---

[3] The sister's testimony on cross-examination asserted to be the basis for the claim of ineffective assistance of counsel is distinct from the sister's cross-examination testimony asserted to be the basis for the purported trial court error complained of in Division 6.

[4] Appellant's trial counsel had asked: "And throughout the course of your childhood and growing up, you and your brother have never gotten along; isn't that true?" and then asked: "Your mother put your brother out when he was a kid, did she not?"

Lastly, appellant grounds his claim of ineffective assistance on trial counsel's failure to object to two portions of the prosecuting attorney's closing argument that appellant believes were improper — a purported endorsement of the veracity of a witness[5] and a purported plea to convict appellant based upon his future dangerousness.[6] At the hearing on the motion for new trial, trial counsel was not asked about his failure to object to the State's closing argument.

" 'It is improper for counsel to state to the jury counsel's personal belief as to the veracity of a witness; however, it is not improper for counsel to urge the jury to draw such a conclusion from the evidence.' [Cit.]" *Mason v. State*, supra, 274 Ga. 79 (2) (b). As was the case in *Mason*, the prosecutor's comments regarding appellant's sister and her testimony "are permissible since they are the conclusion the prosecutor wished the jury to draw from the evidence, and not a statement of the prosecutor's personal belief as to the veracity of a witness." Id.

"It is manifestly improper for a prosecutor to argue to the jury during the guilt-innocence phase of any criminal trial that if found not guilty, a defendant poses a threat of future dangerousness." *Wyatt*

---

[5] The argument at issue is:
[Appellant's sister] is the most important witness in this case. I told you that in opening. I really wanted you to pay attention to her. And I know that you did. And she's the defendant's sister. What about her manner of testifying? She was very clear. She was very strong. She was unwavering in what she told you, in spite of the fact that [defense counsel] really went after her on cross-examination. She held her own without any help from me. Her manner of testifying. She never changed her story and she told you that nobody put those words in her mouth. That's the truth, that's what happened. And although she may have had some difficulty testifying initially, when she saw her brother in court and the expression on his face, she was able to overcome that. I know y'all remember when she said that.

[T]here is really one word that describes [the witness] and it's character, character. She has character. . . . She testifies against her interest. She has everything to lose in this case. She stands to alienate her entire family, but she came in here and she did what was morally and legally right because she knew that she is the person who is to be held accountable for what she does. [The witness], she is credible.

[6] The argument at issue is:
We spent a lot of time talking about the law and it's important because our laws are designed to protect the weaker members of our society from more stronger, more cunning individuals, this defendant. The laws are designed to protect the people that still live in that community, [two witnesses] and all the other people who are involved in this case who have tried very desperately to change their lives. . . . On behalf of his family, that community, and [the victim] himself, I ask you to protect the community. Those people can't protect themselves. . . . They need your help. He is a menace to our society. He's like a cancer in the community, and I am asking you to be the surgeons and cut him out. Send a message to those people that they are not alone. There would be no walls up around Dixie Hills that would prevent something like this from happening in your communities. Take a stand and do what's right.

*v. State*, 267 Ga. 860, 864 (2) (b) (485 SE2d 470) (1997). "[A] defendant's probable future behavior . . . is not relevant where, as here, the jury decides only the defendant's guilt or innocence." *Mason v. State*, supra, 274 Ga. 79 (2) (c). A prosecutor argues future dangerousness when the prosecutor asserts there will be more victims if the defendant is not found guilty (*Pearson v. State*, 277 Ga. 813, 816 (5) (b) (596 SE2d 582) (2004); *Mason v. State*, supra, 274 Ga. 79; *Bellamy v. State*, 272 Ga. 157 (11) (527 SE2d 867) (2000); *Sabbs v. State*, 248 Ga. App. 114 (2) (545 SE2d 671) (2001); *Nickerson v. State*, 248 Ga. App. 829 (2) (a) (545 SE2d 587) (2001)), or the community or witnesses will be endangered if the defendant is not found guilty. *Collier v. State*, 266 Ga. App. 345 (596 SE2d 795) (2004); *Williams v. State*, 261 Ga. App. 511 (3) (583 SE2d 172) (2003). The prosecuting attorney's assertion in the case at bar that appellant was a "menace to our society" and a "cancer in the community" that needed to be excised "to protect the community" and, ostensibly, the jurors since there were "no walls around [appellant's neighborhood] that would prevent something like this from happening in your communities" is an argument to the jury that the defendant poses a threat of future dangerousness if not found guilty. Trial counsel's failure to object to the improper argument constitutes deficient performance; "[h]owever, the deficient performance does not constitute ineffective assistance of counsel since appellant did not establish that the failure to object was so prejudicial to his defense that, but for the deficiency, there was a reasonable probability that the outcome of the trial would have been different." *Mason v. State*, supra, 274 Ga. at 80-81; *Pearson v. State*, supra, 277 Ga. 813; *Sabbs v. State*, supra, 248 Ga. App. 114 (2).

*Judgment affirmed in part and vacated in part. All the Justices concur.*

DECIDED JUNE 7, 2004.

*Dell Jackson*, for appellant.

*Paul L. Howard, Jr.*, District Attorney, *Bettieanne C. Hart, Marc A. Mallon*, Assistant District Attorneys, *Thurbert E. Baker*, Attorney General, *Julie A. Adams*, Assistant Attorney General, for appellee.