S10A1583. JONES v. THE STATE.
(704 SE2d 776)

HINES, Justice.

This is the second appearance of this case in this Court. Floyd Jones was found guilty of malice murder and possession of a firearm during the commission of a crime for the fatal shooting of his common-law wife Priscilla Carter Jones, and this Court affirmed his convictions but remanded the case to the trial court for an evidentiary hearing and a determination of his claim that his trial attorney provided ineffective assistance, which was raised for the first time on direct appeal by appointed appellate counsel. See *Jones v. State*, 275 Ga. 156 (563 SE2d 835) (2002). Following a hearing, the trial court rejected Jones's contention that he was entitled to a new trial because his trial counsel rendered ineffective assistance, and Jones appeals. For the reasons that follow, we affirm.

As noted in this Court's prior opinion, on October 7, 1995, Jones's wife suffered a fatal hemorrhage as the result of a twelve

gauge shotgun blast to her mouth. Around 3:00 a.m. following the shooting, an obviously upset Jones went to the homes of two neighbors and asked to use a telephone; he told each neighbor that his wife was dead, and to one of them that "[Priscilla's] face is gone" and her "brains are over the place." Neither neighbor had a telephone, so Jones went to the home of Catherine Deever. After Jones also told her that his wife was dead, Deever called 911. Jones first told Deever that the shotgun had fired while his wife was playing with it and later told her that he and his wife had struggled over the shotgun and that it had gone off while he was trying to wrest it from her. Police officers found a seemingly intoxicated Jones in the road in front of the residence; Jones stated to the officers, "She killed herself, I didn't do it, she killed herself."

Jones's wife was found sitting on a couch, leaning to the side with an obvious injury to the side of her face. There were beer cans, malt liquor containers, and a gin bottle on the table in front of her; she had a pair of scissors in her lap; and an old shotgun was leaning against the wall not far from her body. The shotgun contained a number eight bird shot shell, and pellets later removed from the wife's body were consistent with number eight bird shot.

The following day, Jones told police that he and his wife were drinking alcohol, talking, and watching television when he spied the shotgun leaning on a side of the couch, and when he picked the shotgun up to "break the gun open to get the shell out," it went off and hit his wife, who at the time was located eight to ten feet from him. The next day Jones related to police that before they went to bed, he asked his wife for the shotgun so that he could unload it, and that when he closed the door, the shotgun just went off. He stated that when the shotgun discharged, he was about fifteen or twenty feet from where his wife was sitting, but he later agreed that the distance was less than ten feet.

The forensic evidence was that the shotgun could not have been eight to ten feet away from the victim at the time of the shooting: there was gunpowder residue on the victim's hard pallet, tongue, and sides of the jaw; her gums and the inside of her lips were stained with soot, but there was no stippling from gunpowder on her face; the pellet charge had gone through her mouth, fragmenting her tongue and hard pallet and striking the back of her throat, resulting in injury and damage to her cervical vertebrae, spinal cord, blood vessels, and arteries; the muzzle of the shotgun was either in the victim's mouth or very close to her open mouth at the time of firing. In addition, there was gunshot residue on the victim's hands, which was consistent with a protective response to grab the barrel of the shotgun.

Jones related to a jailmate that the incident began on Wednesday, a couple of days prior to the shooting, when Jones came home at

lunchtime and found a man outside his home; finding the man there bothered Jones; when Jones left work on Friday, he "felt something bad was gonna happen," and he went by the liquor store; he went home, picked up his wife, and they went back to town; they bought drugs and then went home; they drank liquor and smoked drugs; Jones wanted his wife to come to bed but she declined, so he slapped her and said, "bitch come on, let's go to bed"; Jones believed that his wife did not want to go to bed with him because she was "going with another man"; he got out of bed and saw his wife with a pair of scissors in her hand; she told Jones that if he slapped her again, she would use the scissors to defend herself; Jones reached for the shotgun, put it to his wife's mouth and ordered her to open her mouth; she refused and when she tried to stand up to knock the shotgun away from her face, Jones shot her; Jones was "gonna blow a hole . . . through her mouth through the back of her head"; Jones shook his wife to make sure she was dead, and he heard his wife "drowning in her own blood"; Jones put the shotgun back in the corner; he then wiped himself down with bleach and alcohol to remove any gunpowder residue.

During the State's closing argument at Jones's trial, the prosecutor stated:

> And if you want to turn him loose then we'll give him the gun back and he can go find him a crack house and another liquor store and there's no telling who he might — who might make him mad the next time.

Jones contends that his trial counsel's failure to object to the statement amounted to ineffective assistance. However, in order to prevail on his claim of ineffectiveness, Jones must show that trial counsel's performance was deficient and that such deficiency so prejudiced him that a reasonable probability exists that, but for counsel's error, the outcome of his trial would have been different; in doing so he must overcome the strong presumption that counsel's actions fell within the broad range of professional conduct. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Futch v. State*, 286 Ga. 378, 380 (2) (687 SE2d 805) (2010).

Jones urges that the State's argument was improper because it impermissibly informed the jury that he posed a future danger if he were acquitted, and had trial counsel prevented the improper argument, there is a reasonable likelihood that the outcome at his trial would have been different. See *Wallace v. State*, 272 Ga. 501 (3) (530 SE2d 721) (2000).

It is true that it is improper for a prosecutor to argue to the jury during the guilt-innocence phase of a trial that if the defendant is

found not guilty, the defendant will pose a threat of future dangerousness, and that the failure of defense counsel to object may be found to constitute deficient performance. *Fulton v. State*, 278 Ga. 58, 64 (8) (597 SE2d 396) (2004). However, any such found deficiency will not amount to ineffective assistance of counsel unless the defendant can also establish that the failure to object was so prejudicial to his defense that, but for this deficiency, there was a reasonable probability that the outcome of his trial would have been different. Id.

In examining an ineffectiveness claim, this Court does not need to address both components of the *Strickland* inquiry if the defendant makes an insufficient showing on one; specifically, this Court need not determine whether counsel's performance was deficient prior to its examination of the question of whether the defendant suffered prejudice as a result of the alleged deficiency. *Bell v. State*, 287 Ga. 670, 674 (3) (697 SE2d 793) (2010). And, simply Jones cannot prevail because he cannot demonstrate the required prejudice. As noted, the evidence was that Jones gave multiple differing versions of the events leading up to the fatal shooting of his wife; that after the shooting, his initial acts were to ensure that his wife was dead and to clean any trace evidence off his own body; that he related to a fellow prisoner a version of the shooting plainly portraying a situation of malice aforethought; and that the forensic evidence demonstrated that he shot his wife in her open mouth or mere inches from it. The evidence of Jones's guilt was overwhelming, and there is no reasonable probability that the outcome of his trial would have been more favorable had his attorney objected, even successfully, to the prosecutor's statement in argument. *Lambert v. State*, 287 Ga. 774, 777 (2) (700 SE2d 354) (2010).

Accordingly, there is no basis upon which to reverse the adverse determination of Jones's claim that his trial counsel was ineffective and the consequent refusal to grant him a new trial.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 10, 2011.

*Robert L. Persse, Stuart H. Patray*, for appellant.

*Richard A. Mallard, District Attorney, Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.