**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 13, 2025**

# In the Court of Appeals of Georgia

A24A1799. DELY v. THE STATE.

DOYLE, Presiding Judge.

Following a jury trial, the Superior Court of Cherokee County entered a judgment of conviction against Lionel Dely for rape (OCGA § 16-6-1) and violation of oath by a public officer (OCGA § 16-10-1). Dely appeals from the trial court's denial of his motion for new trial as amended, arguing that he received ineffective assistance of trial counsel and that the trial court erred by allowing other acts testimony from a prior victim pursuant to OCGA § 24-4-413. Finding no error, we affirm.

Viewed in a light most favorable to the verdict,[1] the evidence revealed that Dely was an Atlanta Police Department officer assigned to the Atlanta Proactive Enforcement and Interdiction unit in January 2022. From approximately August 2020 until his arrest in this case in 2022, Dely was not involved in any undercover activities or investigations with other jurisdictions.

On January 31, 2022, the victim, S. L., posted an online advertisement offering to perform erotic massages that did not include sex acts. Dely contacted the victim and set up a morning appointment at her apartment.

Once inside, the victim asked Dely to make himself comfortable, and he undressed completely, laying face down on a massage table the victim had set up in her living room. The victim undressed until she was nude, applied oil to Dely's back, and began to massage his back. After instructing him to turn over, the victim proceeded to massage Dely's legs, avoiding his private area. To massage Dely's chest and stomach, the victim climbed atop Dely, placing her right leg between Dely's legs and her left leg on the outside of Dely's right leg.

---

[1] See, e.g., *Jackson v. Virginia*, 443 U. S. 307, 318-319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Dely then stopped the massage, claiming that he needed to take off his watch. He then picked up his wallet, flashed a silver Atlanta police badge at the victim, and ordered her to sit on the massage table. When the victim said that she thought Dely was comfortable in the situation, he threatened her, claiming that the victim was under investigation and that he had been recording her. Dely then told the victim he would let her go, asked to finish the massage, and the victim agreed.

At first, the massage resumed with Dely on his back on the massage table and the victim straddling him, but Dely then got on top of the victim and forcibly penetrated her. The victim started pushing against Dely and said, "No, stop. I don't do that. I'm not comfortable," but eventually "zoned out" and "just laid there" until Dely ejaculated on the massage table.

After the episode, the victim handed Dely a towel to clean himself while she went to a sink to clean herself. He then offered the victim $10,000 if she would "get out of this industry[.]" Eventually, the victim was able to get Dely out of her apartment.

The victim felt a sense of shock and talked to several friends, including a police officer. On their advice, she reported the incident to Atlanta police and to Cherokee

County authorities, and a forensic examination was performed, during which the nurse observed abrasions in the victim's vagina and bruising of the cervix. Cherokee County authorities obtained a search warrant for, among other things, Dely's DNA, which was discovered on the victim's vaginal swabs. Cherokee County authorities arrested Dely later that month.[2]

At trial, the State presented three other acts witnesses who came forward after news of Dely's arrest appeared in local media. A jury returned guilty verdicts against Dely on both counts of the indictment, and the trial court denied Dely's motion for new trial as amended. This appeal followed.

1. First, Dely contends that he received ineffective assistance of trial counsel due to counsel's failure to object to testimony from three witnesses who, he claims, commented on Dely's "future dangerousness." We disagree.

To demonstrate

> ineffective assistance of counsel, [an] appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable

_____

[2] Dely does not contest the sufficiency of the evidence.

4

professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; however, we review the lower court's legal conclusions de novo.[3]

Importantly,

we evaluate counsel's performance from counsel's perspective at the time of trial. . . . In other words, hindsight has no place in an assessment of the performance of trial counsel, and a lawyer second-guessing his own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel claim.[4]

---

[3] (Citation and punctuation omitted.) *Roberts v. State*, 322 Ga. App. 659, 663 (3) (745 SE2d 850) (2013).

[4] (Citation and punctuation omitted.) *Williams v. State*, 358 Ga. App. 152, 155 (a) (853 SE2d 383) (2021). See also *Harris v. State*, 304 Ga. 652, 654 (2) (821 SE2d 346) (2018). "If an appellant fails to meet his burden of proving either prong of the *Strickland* [*v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)] test, the reviewing court need not examine the other prong." *Roberts*, 322 Ga. App. at 664 (3).

"[T]his burden — though not impossible to carry — is a heavy one."[5]

(a) *Witness Statements*. Dely identifies three statements to which, he claims, trial counsel should have objected.

(i) *Victim S. L.'s Testimony*. During the victim's redirect testimony, the following colloquy occurred:

> Q: Can you think of any way that you've benefit[t]ed from reporting Lionel Dely for raping you?
>
> A: The only way I've benefitted is because I know that other girls will not be harmed by him hopefully.

(ii) *Other Acts Witness V. N.'s Testimony*. Although V. N. initially did not report her encounter with Dely, she described her anonymous response to an online post describing the victim's experience during her direct testimony:

> Q: And in this post, you make statements about feeling sorry.
>
> Can you tell me about that?

---

[5] (Citation and punctuation omitted.) *Mulkey v. State*, 366 Ga. App. 427, 437 (4) (883 SE2d 173) (2023).

A:      I felt very guilty learning that he had done this to somebody else after he did it to me.

Q:      Okay. And why did you feel guilty?

A:      Because I feel like I could've somehow prevented it if I would have been brave enough to say something.

(iii) *Other Acts Witness T. G.'s Testimony.* Similarly, T. G. initially did not report her encounter with Dely. On direct examination, she testified that, after she was introduced to the victim and learned of her experience, T. G. reached out to Cherokee County law enforcement because she "realized . . . [she] wasn't the only [victim] and [she] didn't want to sit back and let it keep happening."

Trial counsel did not object to these statements. During Dely's motion for new trial hearing, trial counsel stated that she did not have a strategic reason for failing to object to the witness' statements, but testified that it was part of her "strategy to get into what [the witness'] motivations were" for coming forward. She also acknowledged that her strategy included highlighting that the witnesses [may have] had "some motivation that . . . prompted them to make a false allegation[.]"

(b) *Analysis*. Dely argues that the witnesses' statements violated the future dangerousness principle, which holds as follows:

> [i]t is manifestly improper for a prosecutor to argue to the jury during the guilt-innocence phase of any criminal trial that if found not guilty, a defendant poses a threat of future dangerousness. A defendant's probable future behavior is not relevant where, as here, the jury decides only the defendant's guilt or innocence. A prosecutor argues future dangerousness when the prosecutor asserts there will be more victims if the defendant is not found guilty, or the community or witnesses will be endangered if the defendant is not found guilty.[6]

Georgia law generally restricts this principle to statements made by prosecuting attorneys during closing arguments; however, we have previously applied it outside the context of closing arguments.[7]

---

[6] (Citations and punctuation omitted.) *Fulton v. State*, 278 Ga. 58, 64-65 (8) (597 SE2d 396) (2004).

[7] See *Waller v. State*, 368 Ga. App. 378, 382 (3) (890 SE2d 142) (2023) (applying the future dangerousness principle to the direct testimony of a victim and the victim's mother); *Furlow v. State*, 297 Ga. App. 375, 378-379 (2) (677 SE2d 412) (2009) (applying the future dangerousness principle to evidence introduced through the State's examination of a rebuttal witness). Indeed, our law recognizes that objections normally reserved for closing arguments may apply during the examination of witnesses. See, e.g., *Bell v. State*, 294 Ga. 443, 445 (2) (754 SE2d 327) (2014) (applying the principle that prosecutors should not express to the jury their personal beliefs as to the veracity of witnesses to a question posed during direct examination

In this case, "the prosecutor never put forth a future dangerousness argument[.]"[8] Dely cites redirect testimony from the victim, but this testimony was offered in response to Dely's counsel's suggestion on cross-examination that the victim intended to sue Dely. And the testimony from the two other acts witnesses to which Dely points merely explained their "reasons for [their] outcr[ies] and for testifying at trial."[9] Because the testimony at issue here was relevant to show the witnesses' motivations for testifying, as challenged by Dely, "there was a reasonable

---

of a witness); *Smith v. State*, 361 Ga. App. 436, 444 (3) (b) (864 SE2d 645) (2021) (applying the principle that counsel should not argue facts not in evidence to a prosecutor's direct examination of a victim); *Dixon v. State*, 303 Ga. App. 517, 526 (6) (b) (693 SE2d 900) (2010) (applying the principle that a prosecutor should not improperly comment on a defendant's silence to questions posed during cross-examination).

[8] *Waller*, 368 Ga. App. at 382 (3). Although Dely observes that the prosecutor's closing arguments were not transcribed, there is no legal requirement that closing arguments be transcribed. See OCGA § 17-8-5 (a); *Woolums v. State*, 247 Ga. App. 306, 309 (3) (e) (540 SE2d 655) (2000). Moreover, Dely "does not state what remarks were improper [to the extent there were any], and made no effort to have any such remarks reconstructed for use in his motion for new trial." *Moody v. State*, 277 Ga. 676, 681 (6) (c) (594 SE2d 350) (2004), citing OCGA § 5-6-41.

[9] We note that, even though Dely's counsel did not pose the questions to the other acts witnesses or object to their testimony, the witnesses' statements were substantively related, at least in part, to Dely's counsel's trial strategy.

explanation for this [testimony] other than future dangerousness, [and] trial counsel did not render ineffective assistance in failing to object to the testimony."[10]

2. Second, Dely asserts the trial court erred in allowing testimony from witness A. F. concerning her prior sexual relations with Dely pursuant to OCGA § 24-4-413 because her experiences were not similar to the crimes with which Dely was charged. We find no abuse of discretion.

Prior to trial, the State filed a notice of intent to introduce other acts evidence pursuant to OCGA § 24-4-413. Relevant to this appeal, one of the other acts witnesses was A. F., identified as "Witness 4" in the State's notice. The State proffered that A. F. met Dely through a dating website, went on dates with him, and believed she was in a dating relationship with Dely. On two occasions in July 2021 and November 2021, A. F. communicated to Dely that she did not want to engage in sexual contact with him. On both occasions, however, Dely ignored A. F.'s statements and had intercourse with her without her consent. Following a hearing, the trial court granted the State's motion to admit the other acts evidence. In pertinent part, the trial court

---

[10] *Waller*, 368 Ga. App. at 382 (3). See also *Watson v. State*, 303 Ga. 758, 763 (3) (814 SE2d 396) (2018) ("Failure to make a meritless objection cannot support a claim of ineffective assistance.").

concluded that "the prior sexual assault is sufficiently similar to the charged sexual assaults to corroborate the victim by demonstrating that the victim's circumstances were not unique." In addition, the trial court noted,

> in applying the requisite balancing te[s]t under OCGA § 24-4-403, the Court finds that the probative value of the other acts of sexual assault in this case is not substantially outweighed by the danger of unfair prejudice. The Court recognizes that the type of evidence the State seeks to admit falls within a narrow category of evidence in which the Georgia Legislature and Appellate Courts have expressed a strong presumption in favor of admissibility and the exclusion of such evidence is an extraordinary remedy which should only be used sparingly.

At trial, A. F. confirmed that she met Dely through a dating website in July 2021 and that they maintained a long-distance relationship until December 2021 or January 2022. During the course of their relationship, A. F. and Dely engaged in consensual sexual intercourse. A. F. described two occasions in which she did not consent to sex with Dely. Once, in July 2021, after having told Dely she was not going to have sex but while the two kissed, Dely removed her shorts and started having sex with her. A. F. "was in shock that it happened[,]" and said nothing to Dely. In November 2021, after

11

A. F. had a medical procedure preventing her from engaging in intercourse, Dely penetrated her without her consent while they sat together in his car.

OCGA § 24-4-413 (a) provides:

In a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing on any matter to which it is relevant.[11]

As a result, OCGA § 24-4-413 creates "a rule of inclusion, with a strong presumption in favor of admissibility, and proving a propensity to commit sex crimes or an inappropriately lustful disposition are legally permissible purposes for admitting evidence of this sort."[12]

Even so,

the trial court must balance the relevance of the evidence against its potential to cause unfair prejudice to the defendant. This balancing requires a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall

---

[11] See also OCGA § 24-4-413 (d) (1) (including rape, codified at OCGA § 16-6-1, within the term "offense of sexual assault").

[12] (Citations and punctuation omitted.) *State v. Ippisch*, 366 Ga. App. 501, 502 (883 SE2d 162) (2023).

similarity between the extrinsic act and the charged offense, as well as temporal remoteness.[13]

Importantly, "prejudice is not unfair simply because it tends to inculpate the defendant in an awful crime[;] [r]ather, it is unfair only if it creates an undue tendency to suggest decision on an improper basis such as an emotional one."[14] "A trial court's decision to admit other acts evidence will be overturned only where there is a clear abuse of discretion."[15]

Here, Dely's argument focuses singularly on the lack of similarity between the conduct described by A. F., who was in a relationship with Dely and had previously engaged in consensual sexual intercourse with him, and the victim. In fact, Dely claims that "[o]ther than both allegations involving sexual intercourse, they were completely dissimilar." What Dely's argument ignores is the common thread between

---

[13] (Citations and punctuation omitted.) *State v. Berrien*, 364 Ga. App. 217, 225 (2) (874 SE2d 430) (2022).

[14] (Citation and punctuation omitted.) *Ippisch*, 366 Ga. App. at 504.

[15] (Citation and punctuation omitted.) *Thomas v. State*, 370 Ga. App. 370, 374 (2) (896 SE2d 885) (2024).

each of the allegations: a propensity to engage in non-consensual sexual intercourse, regardless of the setting.[16]

As a threshold matter, because A. F.'s testimony "bears on [Dely's] propensity to engage in non-consensual sex, it would be relevant here, where consent is an essential element of the charged offense[.]"[17] Moreover,

> when applying Rule 403 balancing to evidence of prior offenses of sexual assault, the court must take into account that such evidence is naturally prejudicial. However, generally, it is not unfairly prejudicial; rather it is prejudicial for the same reason it is probative: *it tends to prove the defendant's propensity to engage in sexual assault.*[18]

In addition, the allegations against Dely were sufficiently similar to demonstrate that he had a pattern of pursuing non-consensual sexual contact.[19] Finally, the fact that A.

---

[16] See generally *Steele v. State*, 337 Ga. App. 562, 566 (3), n. 5 (788 SE2d 145) (2016) ("OCGA § 24-4-413 provides an exception to the general rule in sexual assault cases and allows the admission of propensity evidence.").

[17] *Berrien*, 364 Ga. App. at 226 (2) (a).

[18] (Citations and punctuation omitted; emphasis supplied.) *Ippisch*, 366 Ga. App. at 504.

[19] See *Hartman v. State*, 358 Ga. App. 663, 669-670 (2) (b) (i) (856 SE2d 39) (2021) (in defendant's prosecution for rape and aggravated sodomy following administration of a "date rape" drug, affirming other acts evidence that defendant ignored another woman's wishes "that she did not want to have intercourse" and

F. and Dely had engaged in consensual sexual intercourse on other occasions and that A. F. did not tell Dely "no" on the July 2021 and November 2021 occasions does not render the other acts evidence inadmissible because "a jury would [still] have been authorized to conclude that [Dely] raped [A. F.]."[20] Accordingly, we find no abuse of the trial court's discretion in admitting the other acts evidence from A. F.

*Judgment affirmed. Watkins, J., concurs. Hodges, J., concurs specially.*

---

instead forcibly engaged in sex with her in his vehicle).

[20] *Hartman*, 358 Ga. App. at 670 (2) (b) (i) (affirming other acts evidence "[a]lthough [the witness] could not remember explicitly telling [the defendant] 'no' during the encounter" when the witness previously told the defendant she did not want to engage in sexual intercourse).

A24A1799. DELY v. THE STATE.

HODGES, Judge, concurring specially.

I concur fully in Division 2 of the majority's reasoned and well-written opinion, but I concur only with the result in Division 1. In my view, Georgia law restricts the future dangerousness principle to statements made by prosecuting attorneys during closing arguments. See, e.g., *Fulton v. State*, 278 Ga. 58, 64-65 (8) (597 SE2d 396) (2004). To the extent *Waller v. State*, 368 Ga. App. 378 (890 SE2d 142) (2023), and *Furlow v. State*, 297 Ga. App. 375 (677 SE2d 412) (2009), suggest that future dangerousness may also be applied to the admission of evidence, we should disapprove them. Regardless, however, I agree with the majority's conclusion in

Division 1 that Dely failed to demonstrate ineffective assistance of trial counsel. Therefore, I concur specially in Division 1.

Under Georgia law,

[i]t is manifestly improper *for a prosecutor to argue to the jury during the guilt-innocence phase of any criminal trial* that if found not guilty, a defendant poses a threat of future dangerousness. A defendant's probable future behavior is not relevant where, as here, the jury decides only the defendant's guilt or innocence. A prosecutor argues future dangerousness when the prosecutor asserts there will be more victims if the defendant is not found guilty, or the community or witnesses will be endangered if the defendant is not found guilty.

(Citations and punctuation omitted; emphasis supplied.) *Fulton*, 278 Ga. at 64-65 (8). The majority concedes that, in this case, "the prosecutor never put forth a future dangerousness argument[.]" See *Waller*, 368 Ga. App. at 382 (3). As a result, the future dangerousness principle does not apply, and our analysis should end there.

Indeed, among all of the reported cases that have cited the future dangerousness principle, only two have been identified as departures from the traditional application of the principle to prosecuting attorneys' statements during closing arguments.[1]

--------

[1] I note that each of the additional cases upon which Dely relies are inapposite, as they all involve prosecutors' closing arguments and simply repeat the principle that

*Furlow*, 297 Ga. App. at 378 (2), is the first case cited by Dely for the proposition that future dangerousness may arise in a context other than during a prosecutor's closing argument. There, the State called Furlow's fellow inmate as a rebuttal witness to contradict Furlow's testimony denying acts of child molestation. Id. In a letter he sent to the State, the inmate described a conversation in which Furlow admitted molesting the victim. Id. The inmate's letter concluded: "I sure hope this guy is not placed back on the street where he can get at my three kids or anybody else's without getting the help he needs first. If this can help you in some way then God bless you and please make sure this guy gets the help he needs before placing him back into society." Id. The trial court overruled Furlow's objection and admitted the letter into evidence.

---

"[i]t is manifestly improper for *a prosecutor to argue to the jury during the guilt-innocence phase* of any criminal trial that if found not guilty, a defendant poses a threat of future dangerousness." (Citation and punctuation omitted; emphasis supplied.) *Mikell v. State*, 281 Ga. App. 739, 744 (3) (c) (637 SE2d 142) (2006) (holding that prosecutor's statements on future dangerousness during closing arguments were improper, but finding no reversible error due to overwhelming evidence of guilt); see also *Stroud v. State*, 284 Ga. App. 604, 616-618 (3) (h) (644 SE2d 467) (2007) (concluding trial counsel erred by failing to object to prosecutor's statements, during closing argument, that "a not guilty verdict was tantamount to calling [the victims] liars" and expressing "negative characterizations of the criminal justice system[,]" but finding no prejudice due to overwhelming evidence of guilt).

On appeal, Furlow argued that he received ineffective assistance of trial counsel due to counsel's failure to move for a mistrial following the admission of the letter into evidence. We cited *Fulton* for the proposition that it is improper for a *prosecutor to argue* future dangerousness "to the jury during the guilt-innocence phase of any criminal trial[,]" but still characterized the evidence as future dangerousness without any substantive analysis. *Furlow*, 297 Ga. App. at 378 (2). In any event, we ultimately concluded that Furlow failed to demonstrate the prejudice prong of the *Strickland* analysis and affirmed the trial court's denial of Furlow's ineffective assistance claim. Id. at 378-379 (2).

In the second case, *Waller*, we initially highlighted the absence of a prosecutor's argument as to future dangerousness when addressing the defendant's claim of ineffective assistance of trial counsel due to counsel's failure to object to testimony from a witness allegedly raising the defendant's future dangerousness. 368 Ga. App. at 382 (3). However, we appear to have left open the possibility that future dangerousness could be extended beyond prosecutors' closing arguments by concluding that "because there was a reasonable explanation for this line of questioning other than future dangerousness, trial counsel did not render ineffective assistance in failing to object to the testimony." Id.

*Fulton* makes clear that the future dangerousness principle only applies to statements made by prosecuting attorneys during closing arguments. 278 Ga. at 64-65 (8). Because *Waller* and *Furlow* conflict with this traditional application of the future dangerousness principle, we should disapprove both cases to the extent they can be read to extend future dangerousness to the admission of evidence. To be sure, there will be occasions where an overzealous prosecutor may solicit questionable testimony which might otherwise be described as "future dangerousness." Such questionable testimony would be subject to any number of proper objections, including relevance, speculation, and the ever-present need of all evidence to comport with OCGA § 24-4-403. But whatever else it may be, it simply is not "future dangerousness" as that principle has been traditionally applied in Georgia. For these reasons, I concur specially in Division 1 of the majority opinion.